Crum v. Cotting.

---

CRUM, Treasurer v. COTTING *et al.*

1. **Tax sale: NATURE OF TAX TITLE.** *Semble*, that under the provisions of our statute, the title derived at a tax sale is not a *derivative* one, and, as such, subject, on the one hand, to incumbrances and equities existing against the former owner, and, on the other, clothed with rights and equities held by him against third persons, but a new and independent title derived from the sovereign power under which the tax is levied, paramount to all previous interests, and freed from all incumbrances, except in so far as specially provided in favor of the school and university funds.

2. —— **PRINCIPLE APPLIED.** A purchaser at a tax sale acquires no such right in the mortgage of a junior mortgagee, as entitles him to redeem the premises in question from a sale under foreclosure of a senior mortgage, to which foreclosure proceeding such junior mortgagee was not made a party.

3. —— **OF LAND MORTGAGED TO PUBLIC FUND.** A tax sale of real estate mortgaged to the school or university fund passes only the interest of

| 22 | 411 |
| 83 | 43 |
| 22 | 411 |
| 100 | 497 |

| 22 | 411 |
| 133 | 602 |

| 22 | 411 |
| f142 | 364 |
| 142 | 367 |

the person who holds the fee title, and does not affect the mortgage or any incumbrance existing thereon in favor of either of such funds. § 811, Rev. 1860.

4. —— LIS PENDENS. A purchaser of real estate at a tax sale made after the commencement of an action and the filing of a petition to foreclose a mortgage on such estate in favor of the university fund, acquires no interest in the premises as against such mortgagee which would not be cut off or bound by the decree in favor of said fund.

*Appeal from Johnson District Court.*

SATURDAY, JUNE 29.

ACTION in equity to bar right of redemption as against a junior incumbrancer. The material facts, in their chronological order, are as follows: William P. Doty was the owner of lot six in block eighty-four of Iowa City, and, together with his wife, Harriet Doty, was in the actual occupancy thereof as their homestead, at the date first hereinafter mentioned. November 24, 1851, said Doty borrowed of the university fund (through the State treasurer) $150, and, to secure the payment thereof, five years thereafter, with interest, gave his note for said sum, and, together with his wife, Harriet, executed a mortgage on said lot. The mortgage was duly recorded.

August 28, 1854, the said Doty borrowed of the said fund, the further sum of $250, and gave another like note and mortgage upon the same property to secure the same, which was also duly recorded.

November 27, 1857, the said Doty borrowed of one E. F. Cotting $——, for which said Doty gave his note, and, together with his wife, Harriet, executed another mortgage upon the property aforesaid, to secure the same, which was also duly recorded.

June 9, 1859, Cotting obtained a decree of foreclosure upon his note and mortgage. In his action for foreclosure, Doty and wife were the only parties.

Crum v. Cotting.

April 26, 1860, the lot in controversy was sold under Cotting's foreclosure decree, and was purchased by him, and he received a sheriff's deed therefor.

May 14, 1860, suit was brought by the treasurer of the university fund to foreclose the two mortgages executed by Doty and wife to secure the two notes above stated. In this action no persons were made defendants except Doty and wife, who were duly served with notice shortly after the suit was brought.

November 9, 1860, the lot in controversy was sold by the treasurer of Johnson county for the taxes of 1858 and 1859, to one E. J. Dean, for $92.16, the whole amount of taxes, interest and costs then due. The defendant McKee claims to be the assignee of the certificate of tax sale which was issued to E. J. Dean.

March, 1861, being the March Term of the Johnson District Court, a decree of foreclosure of the two university mortgages was rendered.

August 2d, 1861, the lot in controversy was sold under the foreclosure decree, and was purchased by the treasurer of the university fund, at the full amount of the judgment, interest and costs, and a sheriff's deed was made accordingly. The treasurer, for the university, took possession of the property, and held the same under his purchase, until the sale to the defendant Hutchinson. During his possession, he received $859 for rents, and expended $890 in improvements and repairs.

July 14, 1866, the university sold, and by its treasurer conveyed, the lot in controversy to the defendant Hutchinson, who took possession thereof under his purchase and still holds the same.

August 8, 1866, the plaintiff brought this suit to bar Cotting's equity, and made Cotting, the junior mortgagee, a defendant, and also made E. J. Dean, C. T. Ransom, C. P. Bacon and Joseph A. McKee, defendants, as claim-

ing some interest subordinate to plaintiff's in the property, by tax sale or otherwise.

August 13, 1866, McKee, claiming to be assignee of E. J. Dean, procured a tax deed to him as such assignee, from the treasurer of Johnson county. He filed his answer on the same day and made the same a cross petition against the plaintiff and Hutchinson, his vendee, and claimed the right, under his tax purchase and deed, to redeem from the mortgage foreclosure and sale to the plaintiff.

October 26, 1866, the defendant Robert Hutchinson filed his answer to the defendant McKee's cross petition, denying his right to redeem from the university mortgages, and making the same a cross petition against McKee, and thereunder claiming the right to redeem from McKee's tax deed by reason of being the grantee of the homestead right and title of Harriet Doty, who is still living and a *feme-covert*.

November 2, 1866, this cause was tried to the court, as between the plaintiff and the defendants McKee and Hutchinson, the defendant Cotting having made default, and the other defendants asserting no claim.

The District Court adjudged that the plaintiff, for himself and his vendee, Hutchinson, is entitled to a foreclosure; that the amount due is $1,019.66; that the rent received by plaintiff was $859; that repairs made by him were $890; that the rent of the premises since Hutchinson purchased (July, 1866) was $25 per month; that McKee by his tax deed acquired all the interest and equities of Cotting, and was entitled to redeem by paying the debt and repairs less the rent; and upon his paying the same within twenty days his title should be absolute; that the defendant Hutchinson had no right to redeem from McKee's tax purchase and deed.

The plaintiff and Hutchinson appeal.

*Rush, Clark* and *Wm. J. Haddock* for the appellants.

*Fairall & Boal* for the appellees.

COLE, J.—The facts in this case are exceedingly complicated. It may well be doubted whether the chronological order of stating the facts, as above adopted, is the most perspicuous; and yet, therefrom, a person desiring to do so, may very easily ascertain the facts bearing upon the questions discussed in this opinion, as well as the many questions made by the counsel in the case, but which are not herein discussed.

The leading question involved in the case, because decisive of it if held for the plaintiff, is, whether the holder of a tax deed succeeds thereunder and thereby to the equities of the previous owners; or whether he takes a new title, paramount to theirs, derived from the sovereign power under which the tax is levied?

<div style="margin-left:2em">1. TAX SALE: nature of tax title.</div>

There is a section of the statute, passed April 2, 1860, and which took effect July 4 of that year, and now a part of the Revision of 1860, which has an important bearing upon the determination of this cause. It is as follows:

"SEC. 811. That in all cases where real estate is mortgaged or otherwise incumbered to the school or university fund of this State, the interest of the person who holds the fee title shall alone be sold for taxes, and in no case shall the lien or interest of the State be affected by any sale of such incumbered real estate made for taxes."

It will be observed by reference to the statement of facts, *supra*, that the junior mortgagee, Cotting, obtained his decree of foreclosure, and purchased the property in controversy at a sale thereunder, prior to the time of the tax sale under which McKee holds his tax deed. Now, the

defendant, McKee, claims, that since Cotting, as a junior
incumbrancer and purchaser thereunder at his foreclosure
sale had the right to redeem from the plaintiff's mort-
gages, that he (McKee), by the tax sale and deed to him,
succeeded to all of Cotting's rights and equities in or to
the property, as against the plaintiff and all others; and,
therefore, that he has the right to redeem from the plaint-
iff's mortgages or judgment thereon. This claim is
supposed to be fortified by the language of the statute,
which declares that the tax deed, when properly executed
and recorded, "shall vest in the purchaser all the right,
title, interest and estate of the former owner in and to
the land conveyed, etc."

The validity of this claim, unconnected with the fact
hereafter mentioned, would depend upon the nature of
the title acquired by the tax sale and deed. If the tax title
is a *derivative* one, then the purchaser or grantee takes
the title of the owner against whom it was taxed, with all
its rights, privileges and incumbrances. For if he
*derives* his title from the tax owner, so to speak, he will
take it with the benefits of the covenants running with the
land, and the burdens attaching to it. A stream cannot
rise higher than the fountain.

On the other hand, if the tax deed clothes the purchaser
with a new title in the nature of an independent grant
from the sovereign authority, barring or extinguishing
the prior titles, then the purchaser takes the estate with-
out any possible incumbrances, and of course, without
any claims or equities growing out of or connected with
the prior titles.

It is said by Mr. Blackwell in his valuable treatise on
tax titles, that there are no express adjudications upon
this point. He then proceeds to state his view, in sub-
stance, that when the tax is a charge upon the land alone,
and no resort in any event is contemplated against the

owner or his personal estate, and where the proceeding is strictly *in rem*, the tax deed will have the effect to destroy all prior interests in the estate, and vest the purchaser with a new and independent title. But when the tax is to be made from the owner by personal demand, and in case of default by seizure of the body or goods of the delinquent, and by express terms or fair construction a sale of the land is only to be made when all other remedies have been exhausted, then the sale and tax deed, only pass the interest of him in whose name it was listed. Blackwell on Tax Titles (1st ed.), 642, 643.

While our revenue law authorizes and directs the treasurer to distrain personal property of the delinquent, and sell the same for the payment of taxes, it is not necessary that such distress be made, even where there is such personal property, before the land can be sold, so as to pass a title to the purchaser receiving a deed therefor. Indeed, taking our whole revenue law together, a fair construction of it in this particular is, that the land is both continuously and ultimately liable for the taxes on it, and that the right to seize and sell personal property is, in effect, in aid of the collection of the taxes, and for the more speedy and certain realization of them. It is, too, quite clear and really beyond doubt that the sale of land for taxes, and a tax deed pursuant thereto, pass to the grantee a title other and often better than that of the person in whose name the land was listed. The tax title holder, McKee, would hardly now, even for this case, be content with the doctrine that the tax purchaser, under our law, only acquired the interest of the person in whose name the property was listed. Although our statute is not strictly within the rule or class as stated by Mr. Blackwell, and first above given, under which a tax sale and deed have the effect to destroy all prior interests, and clothe the purchaser with a new title, yet it is very cer-

tain that it does not fall within the last class, under which the interest only of the tax list owner passes by the sale and deed.

While it is perhaps not necessary in this case to determine that under our statute a tax sale and deed does not pass the title of the owner, but operates to destroy all prior interests, and vests the purchaser with a new and independent title, yet it seems from the very nature of the case that it must be so. Let us examine the question by the aid of illustrations.

Suppose the owner of the legal title, while in the actual possession of his real estate, makes a written and recorded contract of sale with another, whereby he is to convey and deliver possession of the same to the purchaser upon the payment of the purchase price, at the expiration of five years from the date of the contract of sale. In the mean time, the owner continues in possession and lists the real estate in his own name, and it is properly assessed and taxed to him. Before the expiration of the five years, the land has been sold to a third person, for taxes, and a tax deed made to such tax purchaser. At the maturity of the contract of sale, the purchaser goes to the new tax owner, tenders his money according to his contract, and demands a deed. The tax purchaser, for the reason that the land has risen in value and is now worth largely more than such contract price, refuses to receive the money or to make a deed. Can the purchaser enforce his contract in equity against the tax purchaser? To state the question is to answer it. No lawyer would claim that, under our revenue law, the tax purchaser could be required to specifically perform the contract of the owner. And why? Simply because the title he acquired by his tax purchase and deed was not a *derivative* title. He did not purchase the equities or liabilities of the owner of the land, but he acquired the title

thereto. He took the title discharged of all contracts for conveyance, judgment liens or other equities existing in connection with it as against the owner. It is true, in the language of the statute, that the tax deed "vests in the purchaser all the right, title, interest and estate of the former owner in and to the land conveyed;" but the title of the tax purchaser is not limited to "the right, title, interest and estate of the former owner;" he takes the title discharged of liens and equities upon it as against such former owner. This he could not do if he claimed *through* or *under* such former owner. In order to bar such liens and equities, it seems necessary, upon principle, that his title shall be an independent one, derived from the sovereign authority, in consideration of the payment of the taxes, and which bars or forfeits all previous titles. The statute, instead of using the words "bar" and "forfeit," accomplishes the same end by declaring the "estate of the former owner" vested in the tax purchaser.

Again, suppose a person had settled upon government land and made valuable improvements thereon, but had never entered the land or acquired title thereto. After several years of occupancy, during which he has made more extended and valuable improvements, he sells the land to another, and that other to a third, and he still to another, all the conveyances being with warranty. During some one of these ownerships, another person rightfully enters the land and acquires title thereto from the government. But in the mean time the land has been listed and taxed in the name of the owner (see *Stryker* v. *Polk county*, 22 Iowa, and authorities there cited), and is sold for the taxes due upon it. The tax purchaser obtains possession under his tax deed. Thereupon the person who entered the land and obtained the patent from the government, sues for and recovers possession of the land from the tax purchaser. The tax purchaser then, claiming that,

Crum v. Cotting.

in the language of the statute, his tax deed vested in him "all right, title, interest and estate of the former owner," and that one of those rights was the right to recover upon the breach of the covenant of warranty held by the owner, in whose name it was listed, against his grantor, brings his suit against such grantor upon the covenant of warranty. Can he recover? Probably no lawyer would claim that a recovery could be had in such case. And why not? The only answer, upon principle, is that the title of the tax purchaser is not a *derivative* one. That is, that the tax title is held, not *under* or *through* the previous conveyances, but *adverse* to them. It is not incumbered by any claims or equities against the former owner, nor is it clothed with any rights or equities held by him as against third persons. The "right, title, interest and estate of the former owner," mentioned in the statute, which is vested by the deed in the purchaser, can only be the right, title, interest and estate *in the land*, and not equities in favor of or against the former owner, *growing out of* his being the "former owner."

These two illustrations, one being of an equity or right *against*, and the other an equity or right in *favor* of the former owner, are sufficient to manifest under which of the two rules or classes of statutes, as stated by Mr. Blackwell, our revenue law properly falls. It is not within the language of either rule as stated by him. But since, by its fair construction as a whole, it is intended to vest the purchaser with a complete and perfect title to the land and not with the right or interest only of the former owner, in whose name it was listed, there can be no well founded doubt that our revenue law belongs to the first of the classes named, *supra*, to wit: That in which the tax deed has the effect to destroy all prior interests in the estate, and vest the purchaser with a new and independent title, freed from all liens and incumbrances except

Crum v. Cotting.

so far as specially provided in relation to the school and university funds.

But a further illustration of this view is found in this case itself. McKee, claiming the equity of redemption which existed in Cotting as a junior mortgagee, alleges in his answer and cross petition that the plaintiff took possession of the mortgaged property, under his foreclosure proceeding and sale (to which Cotting was not a party), and that plaintiff had received the rents and profits thereof up to the time of filing the cross petition, and that the same amounted to eighteen hundred dollars ; and McKee claims and asks that so much of these rents and profits as shall be necessary, be applied in the payment and satisfaction of the plaintiff's mortgage, and that he have judgment for the balance. This is, upon the appellee's theory, a legitimate claim. Let us see how it would work. Plaintiff's mortgage debt is about one thousand dollars ; McKee's claim for rent is eighteen hundred dollars, and if sustained by proof, would leave a balance due him of about eight hundred dollars, and for which he would be entitled to judgment; so that by buying the tax title at ninety dollars, be becomes the owner of the fee simple title to the land, as well as of Cotting's mortgage thereon, and also of a claim or right against the plaintiff to a judgment of eight hundred dollars. This claim of McKee is a logical deduction from his premises, and, if his theory is correct, his legal right to all this is clear and certain. If he has a right, by his tax purchase and deed, to any of the rents and profits he has an equal right to all; and this, too, whether they exceed or fall short of the plaintiff's mortgage claim. The error is fundamental. A sale of land for taxes does not, under our revenue law, pass to the purchaser, mere choses in action or equitable rights which belonged to the person in whose name the land was listed or taxed, by reason of his being such "former owner."

To illustrate still further, and, perhaps, more pertinently: a person having the clear legal title to certain real estate, mortgages the same to secure a debt to another. The land is afterward sold for taxes, and the purchaser obtains and records his deed therefor. Now, although a mortgagee is an *owner* within the meaning of the tax redemption (*Burton* v. *Hintrager*, 18 Iowa, 348), homestead (*Adams* v. *Beale et ux.*, 19 Id., 61), and other laws, it is clear that such purchaser would not acquire the right to the mortgage, nor to sue for and recover the mortgage debt, or to hold the same as against the mortgagee owner. It is proper to remark, however, in this connection, that where a person purchases land at tax sale which has been duly entered, but not patented at the time of the making of the tax sale and deed, that the tax purchaser takes the complete title notwithstanding the patent was not issued at the time of sale; and this for the reason that the patent and the title conveyed thereby relate back to the date of entry. *Sed vide Ross* v. *Borland*, Park., 664; *Gwynne* v. *Neiswanger*, 13 Ohio 64. See also *S. C.*, 15 Ohio, 367; *S. C.*, 18 Id., 400; and, as supporting the above, *S. C.*, 20 Id., 556.

And where, as in *Byam* v. *Cook* (21 Iowa), the owner, as against the government or the school fund, has but a contract of purchase, upon which a balance remains due, the tax purchaser and grantee may have, by reason of his tax deed, a right to pay such balance and receive the patent or deed therefor. But it was held in *Gwynne* v. *Neiswanger* (20 Ohio 556), that the title created by a tax sale is a legal title, and, when not good at law, that a court of equity has no power to aid the purchaser in completing his title. It was also held in that case that a tax title was a breaking up of all titles, and had nothing to do with a previous chain of title; that a tax sale operated on the land and not on the title.

But to pass from this general view of the character of our revenue law to the facts of this case, and the specific right of these parties, we observe, first, that the "act exempting lands owned by the university from taxation, and protecting real estate on which the school or university funds have liens, from sale for taxes," the second section of which we have quoted *supra*, as Revision, section 811, provides that, as against the university fund, the interest of the person who holds the fee title shall alone be sold for taxes. As between the university and Doty, the mortgagee, the latter held the fee title to the property at the time of the tax sale. As between Cotting and Doty, the fee title passed to the former by Cotting's foreclosure and sale in April, prior to the tax sale. But as between the plaintiff and Cotting, the right of the latter was no greater, other or different after his foreclosure than it was before; it was, as to plaintiff's mortgage, simply an equity of redemption, no more and no less. The purchaser at the tax sale acquired the fee title, and all rights of the holder thereof *in the property—jus in re;* but as against the plaintiff's claim, or as against Cotting, he did not acquire a right to Cotting's mortgage, or the equities which pertained to the mortgage. The mortgage is in the nature of a personal claim or chose in action; it is not foreclosed as to plaintiff, and exists as a claim merely, that is a *jus ad rem* rather than a *jus in re.* Such being the nature of the equity held by Cotting, it would not, under the view hereinbefore expressed, pass by the tax sale to the purchaser.

But, leaving out of view entirely the extent of the right or title acquired by the purchaser at the tax sale, and now held by McKee, let us see how that right or title stands as against this plaintiff. It will be seen, by reference to the facts stated, preceding this opinion, that the plaintiff commenced the proceeding to

2.—— principle applied.

4 —— lis pendens.

foreclose the two university mortgages in May, 1860; and that the tax sale was in November of the same year, and while the foreclosure proceedings were pending. By a section of our Revision, (§ 2842), "when a petition has been filed affecting real estate, the action is pending so as to charge third persons with notice of its pendency, and, while pending, no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title, if the real property affected be situated in the county where the petition is filed." Under this section, it would seem that the defendant, McKee, acquired no interest as against the university fund in the property in controversy by the tax sale and deed to him. The same rule in substance (though, perhaps, not quite so broad) obtains in equity, independent of any statute (see Story's Eq. Pl., § 194), and it was held by this court, in *Cooley* v. *Brayton* (16 Iowa, 10), that the rule was as applicable to purchasers *pendente lite* as to incumbrancers. By applying the equitable rule even to the tax purchaser and grantee, he could not acquire any right in the property as against the university fund, pending the suit, which would not be cut off or bound by the decree in favor of said fund. Under the application of this rule, the rights acquired by the tax sale were, as to the university fund, cut off by the decree of foreclosure rendered in the first action to foreclose plaintiff's two mortgages; and, in this view, it may not, perhaps, be material in this case to determine the question as to the rights of a tax purchaser hereinbefore discussed.

This ruling decides the case; and renders it unnecessary to examine the other question made by counsel. Plaintiff is entitled to a decree barring the equity of the defendants in the property.

Reversed.