PHOEBE A. LUCAS v. ANNIE L. PURDY, Appellant.

**Taxation:** SALE OF LAND FOR TAXES:   NATURE OF TITLE ACQUIRED:   EXTINGUISHMENT OF DOWER.   The sale of land for taxes and execution of a deed passes the absolute title to the purchaser as against all adverse claims or liens, except the United States and the State, including the inchoate right of dower.

*Appeal from Tama District Court.*—HON. C. B. BRADSHAW, Judge.

WEDNESDAY, MAY 5, 1909.

THE plaintiff was married to Edward W. Lucas in 1852, with whom she lived as wife until his death December 17, 1900. He had entered thirty acres of land from the United States by original entry November 2, 1853, and it was sold by the county treasurer October 5, 1868, for the taxes of the previous year, and a tax deed issued to S. M. Beeson, who has since deceased, and under whose will the defendant acquired whatever title Beeson took under the tax deed. To the petition, stating these facts and that the inchoate dower interest in said land had never been divested, and praying that one-third thereof be set apart to her, the defendant demurred on the ground that whatever interest plaintiff had in said land was divested by the tax deed. The demurrer was overruled, and, as defendant elected to stand on the ruling, a decree was entered awarding relief as prayed. The defendant appeals.—*Reversed.*

*Struble & Stiger,* for appellant.

*O. A. Byington* and *R. J. Smith,* for appellee.

LADD, J.—The sole question presented is whether a valid tax deed of land belonging to a husband, executed by the county treasurer in pursuance of the statutes of this State, divests the wife's inchoate right of dower therein. Section 3366 of the Code provides that: "One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. The same share of the real estate of a deceased wife shall be set apart to the surviving husband." Appellee contended successfully in the trial court that, inasmuch as the tax sale was not a judicial sale, she was en-

titled to a third of the land as it had not been released by
her nor sold on execution or judicial sale. A referee's sale
in partition has been held to be a judicial sale (*Williams v.
Westcott,* 77 Iowa, 332), as has a sale by an assignee for
the benefit of creditors (*Stidger v. Evans,* 64 Iowa, 91),
and also one by an assignee in bankruptcy (*Taylor v. High-
berger,* 65 Iowa, 134), and in *Sturdevant v. Norris,* 30
Iowa, 65, a foreclosure by notice and sale, authorized by the
Code of 1850, was held to divest the dower interest on
the theory, as appears from the opinion, not that it was
strictly within the definition of a "judicial sale," but that,
"if the Legislature possessed the constitutional power to
authorize this species of foreclosure, we see no good reason
why the same consequences should not attach as in a fore-
closure by action in court and sale on execution." Of
course the only answer to this, if there were one, was that
the Legislature in view of the above statute had not so de-
clared. The courts have no part in the proceedings in this
State which result in a tax deed. The sale is adminis-
trative and not judicial in character. *In re N. Y. Provi-
dence Episcopal School,* 31 N. Y. 574; *Pritchard v. Mad-
ren,* 24 Kan. 436, 491. A decision to the contrary in Mis-
souri was based on the fact that the tax deed is there made
by the sheriff under the direction of the court. *State v.
Sargent,* 12 Mo. App. 228.

Unless then the inchoate interest of plaintiff had been
divested otherwise than contemplated in the exceptions
noted in this statute, plaintiff was entitled to relief. *Lu-
cas v. White,* 120 Iowa, 735; *Lucas v. Whitacre,* 121 Iowa,
251. But the above statute has for its object the protection
of one spouse in the realty of the other, and not as against
the sovereign claim of the State. All property is held
subject to the payment of taxes which are imposed as an
incident of sovereignty. *City of Davenport v. Railway,* 38
Iowa, 633; Cooley, Const. Lim., 479. "The taxing power

has no existence in a state of nature. It is the creature of civil society. Government begets the necessity. There must be interwoven in the frame of every government a general power of taxation." Blackwell on Tax Titles, 2. The burden of governmental support is borne by the people in return for the benefits derived from the protection afforded to life, liberty and property. There is a distinction between the taxing power and that of eminent domain, but it is only in degree, for, while taxation exacts money from individuals as their share of the public burden, theoretically the taxpayer receives just compensation in the benefits conferred by the government in the proper application of the taxes. In the exercise of eminent domain, property is taken, not as the owner's share of the public burden, but as more than his share for which special compensation is made. The power to tax, however, implies the power of the State to enforce the collection of the tax, and necessarily the State in its sovereign capacity may prescribe the mode of accomplishing this and define the interest in property upon which taxes shall attach as liens and what interest shall pass upon sale thereof owing to nonpayment by those upon whom such duty has been imposed, including the inchoate dower interest of the wife. Cooley on Taxation (2d Ed.) 444; 2 Scrib. Dower, 8 et seq.; Morrison v. Rice, 35 Minn. 436 (29 N. W. 168).

The law as it stood in 1868, when the sale of the land for taxes occurred, and in 1871, when the deed issued, provided that "all personal property shall be listed, assessed and taxed in the name of the owner thereof." Section 719, Revision 1860. When it was impracticable to ascertain the name of the owner of real estate it was to be assessed under the head of "owners unknown." Section 737. "No demand of taxes shall be necessary, but it is the duty of every person subject to taxation to attend at the office of the treasurer (unless otherwise provided) at some time dur-

ing the time mentioned." Section 756. "On the first day of February, the unpaid taxes of whatever description, for the preceding year shall become delinquent, and shall draw interest as hereinafter provided; and taxes upon real property are hereby made a perpetual lien thereon against all persons except the United States and this State; and taxes due from any person upon personal property shall be a lien upon any real property owned by such person or to which he may acquire a title. The treasurer is authorized and directed to collect the delinquent taxes by the sale of any property upon which the taxes are levied, or any other personal or real property belonging to the person against whom the taxes are assessed." Section 759, as amended by Acts Extra Sess., 8th General Assembly, chapter 24. The deed was issued without notice. Section 781. See section 1400, Code. And "when substantially thus executed (as directed) and recorded in the proper record of titles to real estate it shall vest in the purchaser all right, title, interest and estate of the former owner in and to the land conveyed and also all the right, title, interest and claim of the State and county thereto." Section 784, Revision 1860. So that the lien of the taxes was against all persons, and, as this was irrespective of the nature of the interest of any, necessarily included the owner of an inchoate dower interest. Upon the execution of the deed, this lien passed to the purchaser. In other words, the sale and execution of the tax deed was in effect the foreclosure of the lien and was as broad as the lien, i. e., against all persons save the United States and the State.

In providing that "the right, title, interest and claim of the State and county" should pass under the deed, the design evidently was to effect a complete transfer of the fee. This was a necessary consequence of the foreclosure of a lien existing against all persons and the logical construction of these statutes. Such is the purport of the de-

cisions of this court declaring that the tax title is not derivative but original, is not limited to passing the title of him in whose name the land is taxed, but divests all interests in the land and vests in the grantee an independent and paramount title. Thus it was said in *Petersborough Savings Bank v. Des Moines Sav. Bank,* 110 Iowa, 519, that "a tax title is not a derivative but a new title, in the nature of an independent grant from the sovereign." Similar expressions appear in *McQuity v. Doudna,* 101 Iowa, 144, and *Bellows v. Litchfield,* 83 Iowa, 43. In *Willcuts v. Rollins,* 85 Iowa, 247, the court observed that: "A tax title is not derivative. If valid, it is a breaking up of all other titles and is antagonistic to all other claims to the land." See *Bull v. Gilbert,* 79 Iowa, 554, where substantially the same language was employed. In *Crum v. Cotting,* 22 Iowa, 411, the subject is somewhat exhaustively considered, and it was said that the tax deed "operates to destroy all prior interest and vests the purchaser with a new and independent title." It was there pointed out that the right, title, interest and estate of the former owner "mentioned in the statute which is vested by the deed in the purchaser can only be the right, title, interest and estate in the land, and not equities in favor of or against the former owner, flowing out of his being the former owner." The result of the decisions of this State are thus summarized in *Hefner v. Insurance Co.,* 123 U. S. 747 (8 Sup. Ct. 337, 31 L. Ed. 309), by Mr. Justice Gray: "If the tax deed is valid then from the time of its delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority which bars or extinguishes all prior titles and incumbrances of private persons and all equities arising out of them." And in *Hussman v. Durham,* 165 U. S. 144 (17 Sup. Ct. 253,

41 L. Ed. 664) Mr. Justice Brewer remarked: "That under such a tax law as exists in Iowa, there is no privity between the holder of the fee and the one who claims a tax title upon the land." The principle is clearly expressed in *Atkins v. Hinman,* 2 Gilman (7 Ill.) 449, where Treat, C. J., said: "The land itself is sold, and not a particular interest in it. If the land was subject to taxation, and the proceedings under the revenue law have been regular, and the owner has failed to redeem within the time limited by law, then the whole legal and equitable estate is vested in the purchaser. A new and perfect title is established. This results from the paramount authority of the State to levy taxes on property within its limits, and coerce the payments by subjecting the property to sale. It is one of the necessary and inherent rights of the sovereign power." In *Guynne v. Niswanger,* 15 Ohio, 367, the court declared that: "A tax title from its very nature has nothing to do with the previous chain of title, does not in any way connect itself with it. It is the breaking up of all previous chains of title. The party holding such title in proving it goes no farther than his tax deed. The former title can be of no service to him, nor can it prejudice him. It was well said by counsel on this point that a tax sale operated on the property, not the title. In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed for taxation, it may be a mere equitable right; if the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitable, may be connected with it." *Bigler v. Karns,* 4 Watts & S. (Pa.) 137; *Smith v. Messer,* 17 N. H. 420; *Sinclair v. Learned,* 51 Mich. 335 (16 N. W. 672); *McFadden v. Goff,* 32 Kan. 415 (4 Pac. 841).

The law is thus summarized in Blackwell on Tax

Titles, 630: "In those states where the tax is a charge upon the land alone, where no resort, in any event, is contemplated against the owner or his personal estate, and where the proceeding is strictly *in rem*, the tax deed will undoubtedly have the effect to destroy all prior interests in the estate, whether vested or contingent, executed or executory, and those in possession, reversion and remainder. In such case the tax law itself is notice to the whole world of the liability of the land for 'all public assessments, and every one claiming an interest in the land is bound, at his peril, to pay the tax, and thus protect that interest from forfeiture or sale. If he neglects his duty in this respect, his title becomes extinct, and a new and independent title becomes vested in the purchaser, freed from all prior liens and incumbrances upon the former estate, and, indeed, of every interest carved out of the old fee. The fee of the land passes, and not the interest simply of the former owners. All that can be required of the purchaser in such cases is to show title out of the State, prove the regularity of the proceedings, and introduce his deed, and he makes out a complete and perfect title to the fee. On the other hand, where the law requires the land to be listed in the name of the owner of the fee, or of any other interest in the estate—provides for a personal demand of the tax—and in case of default authorizes the seizure of the body or goods of the delinquent, in satisfaction of the tax, and in terms, or upon a fair construction of the law, permits a sale of the land only, when all other remedies have been exhausted—then the sale and conveyance by the officer passes only the interest of him in whose name it was listed, upon whom the demand was made, who had notice of the proceedings, and who alone can be regarded as legally delinquent. In such cases the title is a derivative one, and the tax purchaser can recover, in ejectment, only such in-

terest as he may prove to have invested in the defaulter at the time of the assessment.'"

As seen, no demand for the payment of taxes was essential in this State, nor did these constitute a debt or personal charge against the owner. *Plymouth County v. Moore,* 114 Iowa, 700. Moreover, the proceedings, save for the recovery of the mulct tax, are now, as then, *in rem* and exclusive. *Crawford County v. Laub,* 110 Iowa, 355. The land was both continuously and ultimately liable for the taxes on it, and the right to seize and sell personal property was in effect in aid of the collection of the taxes and for the more speedy realization on them. *Crom v. Cotting, supra.* In that case the court, after referring to the above quotation from Blackwell on Tax Titles, remarked that the revenue law was not within either rule, and proceeded: "But since, by its fair construction as a whole, it is intended to vest the purchaser with a complete and perfect title to the land, and not with the right or interest only of the former owner, in whose name it was listed, there can be no well-founded doubt that our revenue law belongs to the first of the classes named, *supra,* to wit, that in which the tax deed has the effect to destroy all prior interest in the estate, and vest the purchaser with a new and independent title, freed from all liens and incumbrances except as far as specially provided in relation to the school and university funds." We are not inclined to override the former decisions of this court which proceed on the theory that the tax deed in this State conveys the entire fee to the owner. The land alone is assessed, and, under the general rule as stated by Mr. Blackwell, "the deed carries a fee simple absolute, a new and independent title, the land itself being conveyed; and all prior liens, incumbrances, and interest in, to, or upon the land are extinguished."

But appellee suggests that, even though the title of the purchaser at tax sale be considered as derived directly from

the State, this does result in the elimination of the right of dower. Inasmuch as the tax title uproots and destroys not only the title of him from which the right of dower arises, but also the entire chain of title on which it depends, there is no escape from the consequences indicated. See Blackwell on Tax Titles, section 422, where the author lays down the rule that under such circumstances the inchoate rights of dower are divested. And it was so decided in *Jones v. De Vore,* 8 Ohio St. 430. In *McWhirter v. Roberts,* 40 Ark. 283, it appears that the land was forfeited to the State because of the nonpayment of taxes, and the court held that the deed from a commissioner divested the wife of any claim to dower in the land. So under the act of Congress construed in *Turner v. Smith,* 14 Wall. 553 (20 L. Ed. 724), the land was forfeited to the government upon the nonpayment of taxes. See *Tomlinson v. Hill,* 5 Grant's Ch. U. C. 231. It is said that this subjects the wife's interest to danger of loss through the fault of the husband. Possibly, but the right of dower may be lost in the dedication of realty of the husband to the public use. *Duncan v. City of Terre Haute,* 85 Ind. 104; Dillon on Municipal Corporations, section 459; *Guynne v. Cincinnati,* 3 Ohio, 24 (17 Am. Dec. 576); Scribner on Dower, chapter 27. And so it is held to be barred through the exercise of the power of eminent domain. *Moore v. City of New York,* 8 N. Y. 110 (59 Am. Dec. 473). Where the taxes constitute a personal demand against the owner, as in *Thompson v. McCorkle,* 136 Ind. 484 (34 N. E. 813, 36 N. E. 211, 43 Am. St. Rep. 334), the dower interest is held not to be divested by the tax deed.

In *Shell v. Duncan,* 31 S. C. 547 (10 S. E. 330, 5 L. R. A. 821), the statute provided "that at all sales of land for taxes, only the right, title and interest of the one in whose name the land has been listed and assessed shall be sold," the lien to be prior to "any incumbrances

created by or against the owner of property listed for taxation," and it was held that, although the dower may never become absolute, "yet, from the moment that the facts of marriage and seisin concur, it is so fixed on the land as to become a title paramount to that of any person claiming under the husband," and that it did not pass under the tax deed. Again the excerpt from Blackwell on Tax Titles is set out and attention directed to the circumstance that only the right, title and interest of the person in which name the land was listed was sold. No argument is required in the face of such a statute to prove that the interest of another, even though inchoate, does not pass under the tax deed. In *Blevins v. Smith,* 104 Mo. 583 (16 S. W. 213, 13 L. R. A. 441) two of the judges of a division of the court held that the tax title under the law of that State is derivative, and that "it was clearly the intention of the Legislature to give the same effect to a tax deed under regular and valid proceedings that a deed under a general judgment would have," while the other judge, in a vigorous and able dissenting opinion, contended, even though judgment of court was essential, the sheriff's deed conveyed an absolute fee. These last cases construe statutes so essentially differing from those of this State that they can not be regarded as controlling but rather confirm the second rule laid down by Mr. Blackwell and illustrate its correctness.

We are of opinion that plaintiff's right of dower was divested by the tax deed, and that the court erred in ruling otherwise.—*Reversed.*