H. L. NEDDERMAN et al., Plaintiffs, Appellees, v. CITY of DES MOINES et al., Defendants, Appellants, FREMONT L. BECK, Intervener, Appellant.

No. 43406.

JUNE 19, 1936.

McMartin, Herrick & Langdon, for plaintiffs, appellees.

Van Liew, Weaver, Ralls, McNutt and Ash, for defendants, appellants.

Emmert, James & Lindgren, for intervener, appellant.

RICHARDS, J.—Leaving the intervener's petition for discussion in a later portion of this opinion we first proceed to a consideration of the issues as between plaintiffs and defendants, by all of whom the following facts are conceded: that plaintiffs are the holders of a valid tax deed to the city lots involved, dated April 1, 1935, issued pursuant to a county treasurer's tax sale for general taxes; that at the time of all transactions involved in this case said lots have been within a locality zoned for commercial or business purposes by the zoning ordinances of said city; that said lots are a part of a subdivision designated as

Fair Acres, within the city of Des Moines, the subdivision containing 64 lots; that the person platting the subdivision has conveyed nearly all of the lots, including the two to which plaintiffs claim title under tax deed; that each deed of conveyance by the proprietor of the subdivision contained restrictive provisions, one being that no business or store building shall be placed or constructed on the premises prior to the year 1950; that on June 4, 1935, the defendant city issued to plaintiffs a written permit to erect a one-story frame building upon one of the lots in question to be used as a retail store; that afterwards a written notice, bearing date June 11, 1935, was given to plaintiffs by defendant city informing plaintiffs that by roll call No. 950 passed June 10, 1935, by the city council of defendant city, the building department had been ordered and directed to revoke the building permit issued June 4, and notifying plaintiffs that the permit was revoked and that plaintiffs were to immediately cease all building operations.

On July 10, 1935, plaintiffs brought this equity action now before us, the petition containing the foregoing matters, and praying that the building permit above mentioned be decreed to be valid and binding upon defendants, that plaintiffs be authorized to proceed thereunder with the construction of the building; that the resolution of the defendant city of June 10, 1935, be decreed null and of no force and effect; that defendants be enjoined from interference with the construction of said building in accordance with said permit, and that plaintiffs have general equitable relief. For answer defendants set out a provision in the above mentioned zoning ordinance which recites: "It is not intended by this ordinance to interfere with or abrogate or annul any easements, covenants or other agreements between parties."

The answer further alleged that the building permit which had been issued to plaintiffs would abrogate the covenants and agreements of private parties and the owners of said land, particularly the provision in the various conveyances made by the proprietor of the subdivision that "no business or store building shall be placed or constructed on said lot." Plaintiffs replied denying that said building permit abrogates the covenants and agreements of private parties or the owners of said land, and in support of such denial say that by virtue of their tax deed they have an absolute title unaffected by any restrictive cove-

nants contained in the chain of title of any previous owner. Thus the issues are narrowed down to a point where plaintiffs and defendants both concede in argument that the question on this appeal is,—Does a tax deed in Iowa operate to cut off a restrictive covenant such as a building restriction imposed by deed in the previous chain of title?

In Crum v. Cotting, 22 Iowa 411, in a general discussion of the character of title conveyed by a tax deed, reference is made to a statement in the text in Blackwell on Tax Titles, wherein the author expresses the view that when a tax is made a charge upon the land alone and no resort is contemplated against the owner or his personal estate, or where the proceeding is strictly in rem, the tax deed will have the effect to destroy all prior interests in the estate and vest the purchaser with a new and independent title. Following an extended discussion the opinion concludes that, by a fair construction of Iowa statutes as a whole, it is intended by them to vest the purchaser with a complete and perfect title to the land, and not with the right and interest only of the former owner, in whose name it was listed, and that there can be no well founded doubt that our revenue law belongs to the class referred to by Blackwell as above set out, to wit, that class in which the tax deed has the effect to destroy all prior interests in the estate, and vest the purchaser with a new and independent title, freed from all liens and encumbrances except so far as especially provided in relation to the school and university funds. While the writer of that opinion states that it was perhaps not necessary in that case to determine the character of the title acquired through a tax deed, nevertheless the opinion has been adopted and followed in the subsequent opinions of this court. In Lucas v. Purdy, 142 Iowa 359, 361, 120 N. W. 1063, 1064, 24 L. R. A. (N. S.) 1294, 19 Ann. Cas. 974, it is said:

"All property is held subject to the payment of taxes which are imposed as an incident of sovereignty. City of Davenport v. Ry., 38 Iowa 633; Cooley, Const. Lim., 479. * * * In providing that 'the right, title, interest and claim of the state and county' should pass under the deed, the design evidently was to effect a complete transfer of the fee. This was a necessary consequence of the foreclosure of a lien existing against all persons and the logical construction of these statutes. Such is the

purport of the decisions of this court declaring that the tax title is not derivative but original, is not limited to passing the title of him in whose name the land is taxed, but divests all interests in the land and vests in the grantee an independent and paramount title. * * * In Willcuts v. Rollins, 85 Iowa 247, 52 N. W. 199, the court observed that: 'A tax title is not derivative. If valid, it is a breaking up of all other titles and is antagonistic to all other claims to the land.' * * * In Crum v. Cotting, 22 Iowa 411, the subject is somewhat exhaustively considered, and it was said that the tax deed 'operates to destroy all prior interest and vests the purchaser with a new and independent title.' "

In Iowa Sec. Co. v. Barrett, 210 Iowa 53, 230 N. W. 528, the question was again carefully considered and the same conclusion reached. In that case it was held that a tax sale and deed for general or ordinary taxes cut off the lien of unmatured special assessments which had attached prior to the tax sale.

To avoid the holdings above pointed out, defendants cite code section 7109, which provides that all property subject to taxation shall be assessed at its actual value and that in arriving at such actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present and prospective, its market value, if any, and all other matters that affect the actual value of the property. Defendants say that in considering "all other matters that affect the actual value of the property" the assessor should take into account the depreciation in value of a servient tenement in case an easement or restrictive covenant is carved out of that tenement, and should take into account the increased value of a dominant tenement in case that tenement is the beneficiary of an easement or restrictive covenant carved from an adjoining tenement. Defendants assuming that such was the method of assessment that preceded the tax sale to plaintiffs, would conclude that plaintiffs' tax deed cannot convey a property against which there is a covenant running with the land, free and clear of that covenant, because the tax title conveys no more than that property contemplated in the assessment. We cannot concur in defendants' such conclusion because it is not compatible with our general tax system to assume that the assessor took into consideration any question of dominant or servient tenements that might have been revealed had he

searched the title records, nor do we think section 7109 indicates any legislative intent that the state be handicapped in the prompt collection of revenue by the burden of tracing out subdivided or qualified interests and be compelled to seek to hold the various owners responsible according to their respective interests. Quite the opposite is true. The land is assessed as land. The assessment is not against scattered and divided titles. The land alone is assessed. Lucas v. Purdy, 142 Iowa 359, 120 N. W. 1063, 24 L. R. A. (N. S.) 1294, 19 Ann. Cas. 974. It might be added that nothing in the record indicates that in this case the assessor did attempt to take into consideration any questions of depreciation or appreciation of servient or dominant tenements. Nor does defendants' argument make at all clear the manner in which any distinction between dominant and servient tenements could have been made, in view of the fact that the lots stood in the same relative status, one to another.

Apparently the identical question involved in this case was before the court in In re Hunt and Bell, 34 Ont. L. R. 256, 24 D. L. R. 590. It was held that a covenant running with the title restricting erection of a building within a certain distance from the street was extinguished by a tax sale and deed. This followed from consideration of the provision of the Assessment Act that the taxes on any land are a special lien upon it having priority to every claim, privilege, lien or encumbrance of every person excepting the Crown. In Hill v. Williams, 104 Md. 595, 65 A. 413, an easement for private alley was held to have been extinguished by a tax sale and deed. In the case at bar there seems no room for any exception to the firmly established law of Iowa as to the character of a sale for general taxes. When these lots were assessed as so much land the state had a lien on all this real estate regardless of titles or interests that individuals may have had. The sale, a species of enforcement of this lien, conveyed all interests therein, no one being able to withhold any interest in said real estate from such lien and sale. The rights which other lot owners may have had under the restrictive covenants have nothing exceptional in character from any other interest subservient to the lien of the state. It follows inevitably that the tax deed extinguished any restrictive covenants that there were in the chain of title of previous owners.

The district court having found in accordance with our conclusion that the building restrictions were extinguished, and

therefore there were no valid grounds for revoking the permit, entered a decree that the defendants be enjoined from interference with the construction of said building in accordance with the building permit issued June 4, 1935, and finding that such building permit was valid and the attempted revocation null and void. We find nothing in the record that would lead us to disagree with this conclusion of the trial court, it being well established in the evidence that the plaintiffs paid the city the fee for the building permit, which fee is still retained by the city so far as the record shows, and in addition paid out and incurred different sums and amounts, partly before and partly after the issuance of the permit as necessary expenses incidental to the construction of the building. We think the situation with reference to the revocation of the permit is ruled adversely to defendants' contentions by the case of Rehmann v. Des Moines, 200 Iowa 286, 204 N. W. 267, 40 A. L. R. 922.

Complaint is also made by defendants of the phraseology of the decree so far as it enjoins the city from interfering with the construction of said building. The decree enjoins defendants from interference in the construction of the building *in accordance with the building permit of June 4, 1935*. We are unable to find therein infringement upon any of the future powers of legislation of defendant city council as claimed by defendants. We do not have the assistance of any suggestions by defendants of a better method of expression.

The foregoing has to do with the case as made and tried by plaintiffs and defendants. We now discuss the petition of intervention. It is alleged therein that the intervener is the owner of lots in Fair Acres and an interested party because the erection of a store building by plaintiffs would depreciate the value of intervener's property; that plaintiffs obtained their tax deed with full knowledge of the building restrictions; that the tax sale and tax deed were had for the purpose of destroying property of intervener and others, and to avoid the restrictions on said lots; that plaintiffs are not the real parties in interest; that the tax deed is invalid and the law with reference to issuance of tax deeds has not been complied with; that proper notice was not served on the title holders or parties in possession; that the tax assessment was not legal. Upon these allegations intervener prayed that the tax deed be held invalid, and that plaintiffs be enjoined from erecting any business building on the

 

lots. It would unduly encumber this opinion to recite at length the evidence upon these questions of fact but a review thereof has led to the conclusion that the district court correctly found that intervener had not established the facts on which he seeks relief. There appears to be no necessity to consider the further claim of plaintiffs that in no event could intervener question plaintiffs' title in view of section 7290, Code 1931, the title to the lots not having been in intervener at any time.

Finding no error in the decree of the district court the same is affirmed.—Affirmed.

DONEGAN, C. J., and PARSONS, HAMILTON, STIGER, KINTZINGER, and MITCHELL, JJ., concur.

ANDERSON and ALBERT, JJ., dissent.