Polk County, Appellee, v. L. W. Basham et al., Appellants.

No. 46237.

December 14, 1943.

T. C. Jones, of Des Moines, for appellants.

Howard M. Hall, of Des Moines, for appellee.

MULRONEY, C. J.—Plaintiff, Polk County, Iowa, filed its petition alleging it was the absolute owner of seventy-one lots in the city of Des Moines and that title was acquired by tax deeds issued to it after having purchased the lots at scavenger tax sales conducted by the county treasurer of Polk County, as provided by sections 7255 and 7255.1, Code of 1939. The petition set forth the legal descriptions of the lots, the years of general tax and special assessments for which said real estate was sold, and the dates of the tax sales. It further alleged that notices as required by law of the expiration of the rights of redemption from said tax sales had been served and filed, with the required affidavits, before the tax deeds were issued, and that all proceedings relative to the assessment and levying of the taxes, and the sale and issuance of the tax deeds were "in all respects valid, lawful and in strict, full and complete compliance with the laws of the State of Iowa relative thereto."

The petition named a number of defendants and alleged that they claimed some interest in several lots, based on deeds, sheriff's deeds, mortgages, and grants, and reservations of mineral rights. The defendants by way of answer alleged that the lots were sold for taxes that ceased to be liens in that the taxes had not been carried forward on the tax lists of Polk County prior to the sale of the property, and consequently the sales to the plaintiff were void and ineffectual to bar the interests of the defendants. The answer further stated that the lots in Lookout Heights were subject to certain building restrictions and to coal and mineral rights, which rights were owned by the defendants C. C. and J. E. Dorr.

Plaintiff by way of reply denied that the tax was not brought forward on the current tax list before sale and further pleaded that the legislature had barred this defense and legalized such tax sales (sections 7295.1 and 10398.2, Code of 1939) even

if there was a failure to carry forward the delinquent tax, as defendants allege. To this reply the defendants answered that sections 7295.1 and 10398.2 are unconstitutional in that they violate section 1 of the Fourteenth Amendment to the United States Constitution, and section 9, Article I of the Constitution of Iowa.

Upon the trial the plaintiff, over defendants' objections, introduced its seventy-one tax deeds and the evidence of their being recorded, and rested. The objection made to the first deed offered, which stood for all the rest, was "that the said exhibit is not supported by any Notice of Intention to Take a Tax Deed; second, no affidavit of service of such notice; third, no showing that the laws of the State of Iowa relative to the issuance of tax deeds and the sale of real estate have been complied with, particularly Section 7193 of the 1935 Code of Iowa, or 7193 of the 1931 Code of Iowa; and further that there is no showing that Notice of Intention to Take a Tax Deed has been served upon all parties in possession or the persons in whose name the real estate was taxed at the time the notice was served."

The plaintiff had purchased all of the real estate at the scavenger tax sale of May 6, 1935, except three parcels which were purchased at the tax sale of December 8, 1937, and one parcel purchased at the tax sale of January 11, 1937. The defendants' evidence consisted largely of the testimony of their counsel, who stated that in 1935 he had checked the tax lists for 1932, 1933, and 1934; that he found a large amount of unpaid taxes going back as far as 1925 on some of the lots and that they had been carried forward on the 1932 and 1933 lists, but not on the 1934 tax list. He stated he checked the list several times and examined it just a few days before the May 1935 scavenger sale and it showed no delinquent taxes carried forward on the lots in question and he checked the list again in June after the tax sale and found no delinquent taxes had been carried forward. He stated that the record as it now stands showed all the unpaid taxes for previous years had been carried forward but that they were not carried forward until November of 1935.

Defendants' further testimony consisted of the record in the county recorder's office showing that on April 30, 1923, the Dorr Investment Company, Inc., had, by warranty deed, con-

veyed the coal and mineral rights under part of these lots to J. E. and C. C. Dorr and subsequent conveyances of these lots had been made subject to the reserved coal and mineral rights. The defendants also introduced that part of the recorder's records showing the filing on March 20, 1941, of an instrument wherein the Northwest Improvement Company imposed building restrictions on certain lots in Lookout Heights and the record of deeds to some lot owners in Lookout Heights recorded in 1923 or 1924 showing building-restrictive covenants in each deed.

Upon this record the court found that the defendants had failed to prove the allegations in their answer and the plaintiff's title to the real estate should be free and clear of all their claims or interest, including the claims of building restrictions and coal and mineral rights. Decree was entered accordingly quieting title in plaintiff in fee simple and cutting off any right or interest of defendants.

I. Did plaintiff establish prima facie evidence of title by merely introducing the tax deeds and showing the recording thereof? We think it did. We said, in Brownell v. Storm Lake Bank, 63 Iowa 754, 757, 19 N. W. 788, 790:

"One asserting title under such [tax] deed has but to introduce it in evidence. And the law puts upon his adversary the burthen of showing its invalidity."

And in Grove v. Benedict, 69 Iowa 346, 347, 28 N. W. 631, 632:

"The presumption is that the tax deed is valid."

And in Shaffer v. Marshall, 206 Iowa 336, 337, 218 N. W. 292:

"It [tax deed] was, in and of itself, a complete and sufficient proof of title."

And in Inter-Ocean Reinsurance Co. v. Morrison, 225 Iowa 1336, 1340, 283 N. W. 909, 911:

"The deeds were properly received in evidence and their reception established a prima facie case for appellee."

In the foregoing cases and in Bennett v. Greenwalt, 226 Iowa 1113, 1127, 286 N. W. 722, 729, we discussed the applica-

tion of the statutes relating to the effect of, and presumption arising from, a tax deed (sections 7284 to 7288, Code of 1939). In the last-cited case we stated that these statutes were designed "* * * to avoid the severity of the common law rule which requires proof of every material step antecedent to the execution of the tax deed, before permitting its admission in evidence."

It is our conclusion that plaintiff's deeds were properly admitted in evidence and constituted prima facie evidence of title in the plaintiff. Nor will it avail defendants to argue that the presumption is waived by the pleading, in that plaintiff's petition alleged that the statutory proceedings relative to the issuance of the tax deeds were all followed. This was true in the Inter-Ocean case and we held that the statutory presumption made the deed prima facie evidence of all the facts alleged in the petition.

■ II. The evidence with respect to the failure on the part of the treasurer to bring the tax forward is all immaterial. If true, it could not be a defense to plaintiff's title. Section 7193 provides that the treasurer shall bring the tax forward on the tax list, but section 7295.1 provides that his failure so to do shall not be a defense attacking the validity of a tax sale or tax deed after November 1, 1939. Also section 10398.2, which took effect April 28, 1939, legalized such tax sales where the treasurer failed to bring forward upon the current list the delinquent taxes for prior years.

■ III. Defendants argue that these statutes are unconstitutional as violative of section 1 of the Fourteenth Amendment to the Constitution of the United States and section 9, Article I, of the Constitution of Iowa. Defendants recognize that the constitutionality of these' statutes was upheld by this court in Campbell v. Bruce, 231 Iowa 1160, 3 N. W. 2d 521, and, in effect, defendants ask us to overrule that case. Our opinion in Campbell v. Bruce to the effect that the statutes were a constitutional exercise of legislative power is, we feel, correct, and we reaffirm the conclusion there expressed.

■ IV. Did the evidence of the coal and mineral reservations serve to prove an interest in the property superior to plaintiff's interest? We think it did not. Plaintiff argues that

the grant of the coal and minerals was not established, for defendants failed to show that the Dorr Investment Company had title at the time the grant was made to J. E. and C. C. Dorr. The argument is persuasive, but, even if the evidence is held to be sufficient, the interest of these defendants was cut off by the tax sale. Ownership of coal and minerals underlying the surface was an interest in the realty. See In re Appeal of Colby, 184 Iowa 1104, 169 N. W. 443. There is no statute in Iowa to the effect that the various interests in land owned by individual owners shall be separately assessed. The assessment is against all interests of all owners. In 61 C. J. 1301, section 1815, the rule is stated:

"A sale of land for taxes may carry title to minerals beneath the surface unless the surface and minerals are separately assessed * * *."

Assuming that J. E. and C. C. Dorr owned the coal and minerals underlying the ground and someone else owned the surface, together they all owned the entire interest in the land. It is not the individual interest of the owner of the surface or the owner of the minerals that is assessed. It is the land that is assessed. We said in Nedderman v. City of Des Moines, 221 Iowa 1352, 1356, 268 N. W. 36, 38:

"The land is assessed as land. The assessment is not against scattered and divided titles. The land alone is assessed. Lucas v. Purdy, 142 Iowa 359, 120 N. W. 1063, 24 L. R. A. (N. S.) 1294, 19 Ann. Cas. 974. * * * When these lots were assessed as so much land the state had a lien on all this real estate regardless of titles or interests that individuals may have had. The sale, a species of enforcement of this lien, conveyed all interests therein, no one being able to withhold any interest in said real estate from such lien and sale."

Section 7286, Code of 1939, provides that all the right, title, interest, and estate of the former owner is vested in the purchaser at tax sale. This does not mean the interest of the person against whom the tax is assessed on the assessor's books, or the person named in the treasurer's tax list. It means all owners of any estate in the realty. If an owner of less than a fee

desires to have the tax apportioned, he can secure this by proceeding under chapter 350, Code of 1939, and the board of supervisors will determine what portion of the total tax the owner of a portion of the fee must pay. Since the record here shows no apportionment of the tax and no separate assessment of the coal and mineral rights, it is our conclusion that all rights thereto were cut off by the plaintiff's tax deeds.

V. Defendants argue that, even if plaintiff's tax deeds were rightly upheld, the court should have decreed that the lots in Lookout Heights were subject to restrictive covenants. In Nedderman v. City of Des Moines, supra, decided June 19, 1936, we held a valid tax deed extinguishes all restrictive covenants in the chain of title of previous owners. Thereafter, the Forty-seventh General Assembly passed chapter 192 (effective March 12, 1937) amending section 7286 of the Code of 1935 and making tax titles "subject to all restrictive covenants, resulting from prior conveyances in the chain of title to the former owner." See section 7286, Code, 1939. Each of plaintiff's deeds contained a clause in the body of the deed in the above language. Neither the deeds nor the record of the deeds of the former owners was introduced in evidence. Indeed, we do not learn from the record exactly who the former owners were. There was no evidence introduced showing the chain of title to the former owners.

The only restrictive covenants that the statute saves and continues after the tax sale are those that result from prior conveyances in the chain of title to the former owners. The record does indicate that Lots 11, 64, 102, 135, 145, and 149 were conveyed in 1923 or 1924 subject to certain restrictive covenants. These lots were among the seventy-one lots described in the petition and decree. Whether the restrictive covenants on these lots remained in the chain of title to the owners down to the time of tax sale we do not know. Whether other lots are subject to restrictive covenants found in the chain of title to the owners at the time of tax sale we do not know. Plaintiff argues that the tax deeds would have issued immediately after the sale, and prior to the amendment of the Forty-seventh General Assembly, had not the issuance of the deeds

been enjoined by prior suits by these defendants. There is no force in this argument, for the answer is, the deeds did not issue until after the amendment and they each contained the clause "subject to all restrictive covenants, resulting from prior conveyances in the chain of title to the former owners * * *."

It is enough to say that plaintiff cannot, in this quieting-title action, secure any reformation of the deeds upon which it relies. Plaintiff also points to the failure of defendants to prove that the restrictive covenants were in the chain of title to the former owners. But this was not part of the defendants' case. With such clauses in plaintiff's deeds, plaintiff was not entitled to any decree quieting its title as against any restrictive covenants until plaintiff showed them not to result from prior conveyances in the chain of title to the former owners. The plaintiff in a quieting-title action must recover on the strength of his own title. We said in Bittle v. Cain, 224 Iowa 1332, 1338, 278 N. W. 608, 611:

"It is a rule of law so familiar as to require no citation of authority to sustain it that one who seeks to quiet title must succeed on the strength of his own title rather than upon the weakness of that of his adversary."

We have frequently said that the holder of a tax deed need not show the chain of title to the former owners, but that was before the amendment saving restrictive covenants which appeared in the former owner's chain of title. With this amendment and with this clause in a tax deed, it becomes incumbent upon the holder of a tax title to show the chain of title to the former owner if he desires a decree to the effect that his title is not subject to restrictive covenants.

Here plaintiff's title, namely, the tax deeds, states that its title is subject to restrictive covenants if they are in the chain of title to the former owners. As long as plaintiff relies upon these muniments of title, it cannot extinguish any certain restrictive covenant without showing that it is not in the chain of title to the former owners, nor can the court decree that plaintiff's title is unencumbered by any restrictive covenants until plaintiff has shown by competent evidence that the title

of the former owner was not subject to restrictive covenants appearing in his chain of title.

Upon the whole record, plaintiff was entitled to a decree quieting its title as against the defendants and persons claiming by, through, and under them, but its title is subject to all restrictive covenants, if any there be, resulting from prior conveyances in the chain of title to the former owners. With this modification, the decree is affirmed.—Modified and affirmed.

All JUSTICES concur.