SHANNON, Chief Judge.
The defendants, appellants here, appeal from a final decree in a declaratory action brought against them by Corydon W. Carpenter.
The complaint alleges that on April 14, 1919, there was conveyed to William K. Jackson, Jr. (deceased), “all phosphate deposits and mineral rights” in the land described by the complaint; that on May 1, 1944, the State of Florida conveyed said lands to the plaintiff in this action by a tax deed based upon Tax Certificate No. 17398, issued on August 7, 1933. The complaint also alleges that the plaintiff is in doubt:
(a) As to whether the tax deed to plaintiff extinguished the title of William Kenneth Jackson and other defendants in and to the said phosphate deposits and the aforesaid mining rights; and
(b) As to the nature and extent of the rights of the defendant herein to mine said phosphate deposits if said right has not been extinguished.
The cause was tried in the court below upon complaint and answer and a stipulation of facts, of which the following was a part:
“1. That on January 1, 1932, William K. Jackson, Jr., was the owner of ‘all phosphate deposits and mining rights in and on’ the following de *434 scribed lands in Polk County, Florida, to-wit:
m/2 of NEK, SWK of NEK, and Wi4 of Section 33, Township 29 South, Range 25 East,
by virtue of a quitclaim deed from Leslie N. Wilkie, joined by his wife, May A. Wilkie, to the said William K. Jackson, Jr., said deed being dated April 14, 1919, and recorded in Deed Book 174, page 21, public records of Polk County, Florida; and by warranty deed from Ella S. Gifford, widow, individually and as executrix of the estate of W. P. Gifford, deceased, to William K. Jackson, Jr., said deed being dated April 14, 1919, and recorded in Deed Book 167, page 515, public records of Polk County, Florida.
“2. The tax assessment roll of Polk County, Florida, for the year 1932 shows that the above described land was assessed without any reservation or exception, and there was no separate assessment of the interest or estate of William K. Jackson, Jr., therein.”
The stipulation goes on to state that the taxes levied for 1932 were not paid and the tax collector sold the land to the State Treasurer, and Tax Sale Certificate No. 17398 was issued, describing the land without reservation or exception. The stipulation also states that on March 17, 1938, the said Tax Sale Certificate was duly assigned to Corydon W. Carpenter, and, in due course, the Clerk of the Circuit Court conveyed the said land to Corydon W. Carpenter, the plaintiff in the action, without reservations or exceptions. The final decree states, in part, that:
“ * * * the tax deed from the State of Florida to Corydon W. Carpenter, hereinabove mentioned, extinguished all right, title and interest of William K. Jackson, Jr., in and to the phosphate deposits and mining rights in the following described lands in Polk County, Florida, to-wit:
m/2 of NEK, SWK of NEK, and Wy2 Section 33, Township 29 South, Range 25 East,
and that the plaintiff, Corydon W. Carpenter, is the owner in fee simple of said lands, free and clear of any claims by the defendants or other persons claiming by, through or under them or the said William K. Jackson, Jr.”
The direct question before us is aptly stated by the appellee, as follows:
“Where mineral deposits and mining rights have been separated and severed by deed from the surface interest of the land and mineral interest were never assessed separately for tax purposes, will a tax deed issued and described according to the government survey description divest and extinguish the rights of the subsurface owners to these minerals and their right to mine same where there is no constitutional or statutory provision permitting or requiring mineral interest to be separately assessed?”
The plaintiff takes the position that in the absence of a statute requiring or authorizing the assessment of separate estates in real property, the tax being levied upon the land itself is a lien against all the estates therein and that a tax sale thereof is a sale of the whole of the estates, and, consequently, the tax deed based upon the sale is a conveyance of all the estates. When the 1932 taxes were assessed the laws of the State of Florida provided for only assessing separate interests in real property on “timber and the turpentine rights.” Sec. 922, C.G.L.1927, Sec. 193.22, Fla.Stat., F.S.A. No other separate interest in real property was mentioned. The first legislation in this State on mineral rights was passed by the Legislature in *435 1945, which is embraced in Chapter 22784, Laws of Florida, 1945, and provides, in part, as follows:
“ * * *• All title forfeitures, foreclosures, reverters, and sales of lands for non-payment of ad valorem taxes shall include the subsurface oil and gas and mineral interests.”
The above chapter was replaced by Chapter 23883, Laws of Florida, 1947, but the portion quoted above was retained. See Sec. 211.14 Fla.Stat., F.S.A. While the laws just cited are inapplicable to our particular question, they are set out here to illustrate the thinking and feeling of our legislators that no law on the subject existed at the time the laws were passed and also for the purpose of evidencing the Legislature’s belief that different estates or interests in land could not be assessed separately without statutory authority.
The general law on this subject is expressed in 51 Am.Jur., Taxation, Sec. 689, as follows:
“Although there is no constitutional objection to separate assessment of the different interests in real estate, it is not in most jurisdictions the policy of the law to require the assessors to tax the different estates and interests which may exist in a single parcel of land to the respective owners thereof, but the assessment is a unit upon the sum of the interests. And this is true whether the taxes are assessed upon the real estate regardless of ownership, or are assessed upon individuals by reason of their ownership * *
The Constitution of Florida, Article IX, Section 1, F.S.A. provides as follows:
“The Legislature * * * shall prescribe such regulations as shall secure a just valuation of all property, both real and personal * * *.”
Sec. 192.01, Fla.Stat., F.S.A. which was in force at the time involved, provides that:
“Unless expressly exempted from taxation, all real and personal property in this state * * * shall be subject to taxation in the manner provided by law.”
Chapter 20722, Sec. 42, Laws of Florida 1941, as amended by Chapter 22079, Sec. 19, Laws of Florida 1943, Sec. 194.53, Fla. Stat., F.S.A. which was and is applicable to the deed in question, provided that when a valid tax deed is issued, all right, title, interest in or liens upon such property, except liens for general taxes, other than county tax liens and municipal liens of equal dignity with county taxes, shall be cut off and declared null and void.
The grantee under a valid tax deed takes the entire estate as provided in Torreyson v. Dutton, 1939, 137 Fla. 683, 188 So. 805, 808, 190 So. 430:
“* * * If a valid tax deed had been applied for and had been issued under the certificate, the grantee of the tax deed would have thereby acquired a complete, new, independent grant from the sovereignty which would have barred or extinguished all prior titles and encumbrances of private persons and all equities arising out of them. * * * ”
See also, Daniell v. Sherrill, Fla.1950, 48 So.2d 736, and cases therein cited.
The purchaser takes all of the estates in a tax deed unless there is constitutional or statutory authority for an exception. See Osterberg v. The Union Trust Co. of N. Y., 1877, 93 U.S. 424, 23 L.Ed. 964, where the court said:
“ * * * A lien for taxes does not, however, stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the res without regard to individual own *436 ership, and when it is enforced by sale, pursuant to the statute prescribing the mode of assessing and collecting them, the purchaser takes a valid and unimpeachable title. * * * ”
This is especially true in Florida where ad valorem taxes are a charge against the land itself and not against the owners of the various estates therein. See Florida Industrial Co. v. State, 1934, 114 Fla. 1, 152 So. 717, and Jacksonville Expressway Authority v. Milford, Fla.App.1959, 115 So.2d 778. The majority rule, where the law does not provide for separate taxation of mineral rights or estates, is fully exemplified by decisions from Oklahoma, Iowa and West Virginia.
In Oklahoma, in the case of State ex rel. Com’rs of Land Office v. Continental Oil Company, Okl., 273 P.2d 1002, 1003, the court stated:
“It is important in a consideration of this case to take note of the position occupied by each of the several parties as the events occurred. At the time plaintiff purchased the mineral estate, it became the owner of an interest in the real property which was not taxable and could not be assessed for that purpose. From a tax standpoint, the surface and the minerals constituted one unit. The assessment of the surface carried with it the minerals thereunder. But there was no duty on the part of plaintiff, the mineral owner, to pay the taxes. That duty rested upon the surface owner and his grantee, whether the grantee be as an owner or as a mortgagee. * * *
“Thus, for taxation purposes, the assessment and taxation of the surface included, as an integral part thereof, the assessment and taxation of the minerals. The two were not separable. There is no provision for assessment and taxation of the minerals as such. ‡ Jjc ‡ })
As was stated by the Iowa court in Polk County v. Basham, 1943, 234 Iowa 225, 12 N.W.2d 157, 160:
“Assuming that J. E. and C. C. Dorr owned the coal and minerals underlying the ground and someone else owned the surface, together they all owned the entire interest in the land. It is not the individual interest of the owner of the surface or the owner of the minerals that is assessed. It is the land that is assessed. * * * ”
See also Peterson v. Hall, 1905, 57 W.Va. 535, 50 S.E. 603.
In determining this question in the State of Washington, the Court of Claims, in Pashley v. United States, 1957, 156 F.Supp. 737, 739, 140 Ct.Cl. 535, said:
“* * * (T)he property was assessed on the tax assessor’s books as an entirety; the mineral interests were not assessed separately. The proceedings to enforce the tax lien were proceedings to foreclose all rights in the property and to vest the property in fee simple in the purchaser at the tax sale. The tax deed to plaintiffs was a deed to the property in fee simple, and the purchaser thereunder, in our opinion, acquired title to the property in fee simple, because the lien of the State of Washington for taxes was a lien on the entire fee and was superior to the rights of all other persons claiming an interest therein.”
The land involved here was sold under a tax deed and our Supreme Court having held that the grantee under a valid tax deed acquires a “complete, new, independent grant from the sovereignty which would have barred or extinguished all prior titles and encumbrances of private persons” (Torreyson v. Dutton, supra), in addition to the fact that, at the time involved, there was no constitutional or statutory exception, we hold that the grantee under the tax deed took fee simple title to the prop *437 erty free and clear of any and all claims, such as those sought by the defendants.
Affirmed.
' KANNER, J., and MOODY, JAMES S., Associate Justice, concur.