508 So.2d 413 (1987)
D.R.L., INC., Appellant,
v.
Frank W. MURPHY and Marcia A. Murphy, Appellees.
No. 86-880.
District Court of Appeal of Florida, Fifth District.
May 7, 1987.
Rehearing Denied June 11, 1987.
Walter B. Dunagan, Daytona Beach, for appellant.
Stephen A. Hilger of Gray, Harris & Robinson, Orlando, for appellees.
COWART, Judge.
This case involves the validity of a tax deed, the description of which refers to a "wild" subdivision plat.[1]
In so far as this case is concerned, at all times prior to May 26, 1981, appellees (the Murphys) and their predecessors in title owned Government Lot 7, Section 6, Township 19 South, Range 30 East, Volusia County, Florida. In November of 1964 a plat known as St. Johns River Estates  *414 Unit 3 was recorded in Map Book 27, Page 221 of the Public Records of Volusia County, Florida, by which a large area of land was subdivided into roads and residential lots. The plat shows lots 1, 2 and 3, Block 45, of the platted land to lie within Government Lot 7, Section 6, Township 19 South, Range 30 East. Upon the filing of this plat, the Volusia County tax assessor put the platted lots on the tax roll and amended the property description by which Government Lot 7 was assessed by adding the qualifying language "except part of Lot 7 in St. Johns Est. Unit 3 MB 27, PG 221 per OR 2007 PG 34." Taxes on platted lots 1, 2 and 3 for the tax year 1977 were not paid. The tax certificates were duly issued on June 1, 1978 and were outstanding and unpaid on August 15, 1978, when appellees acquired their record title to all of Government Lot 7.[2] Subsequently in 1981, applications for tax deeds were filed and the county taxing authorities caused a search of the public records to be made so proper notice could be given. The deed to appellees was noted and appellees were given due notice of the tax deed application and proposed tax sale but they did not pay the delinquent taxes nor did they redeem platted Lots 1, 2 and 3 from the lien of the delinquent 1977 ad valorem taxes. Tax deeds to platted Lots 1, 2 and 3 were duly issued to appellant D.R.L., Inc., on May 26, 1981.
In August 1982, the tax deed grantee (appellant D.R.L., Inc.) commenced this action by complaint ultimately containing a quiet title count (count 1), an ejectment count (count 2), and a count 3, the theory and purpose of which has apparently never been clear to anyone. Appellees answered affirmatively alleging that appellant's chain of title was not valid and that appellees owned the land in question. Appellees also counterclaimed to quiet their title to platted Lots 1, 2 and 3. The trial court entered a summary judgment on appellees' quiet title counterclaim and the tax deed grantee appeals.
There are years of confusion in the record of this case about matters which are immaterial to a proper resolution of the case.
First, appellees claim that the 1964 plat of St. Johns River Estates Unit 3 was filed of record by a company which was never the record titleholder to Government Lot 7 and that, therefore, the plat is invalid and appellant's tax deeds referring to it are invalid. While there is some evidence that the company filing the plat was acting as agent for the then titleholder of Government Lot 7, this matter is legally immaterial because the subdivision plat of a tract of land is, in substance,[3] only a formal land survey consisting of fixing monuments on the ground and drawing points and lines on paper describing the location of those monuments and the lines between them. Such a survey essentially provides a source of compact legally sufficient descriptions of smaller units of land (lots) and such a subdivision plat is not valid or invalid in the sense of a chain of deeds carrying the title to land. Subdivision plats are legally adequate to perform their essential function if by their use a surveyor can locate on the ground parcels (lots) described by reference to the plat. The validity of deeds does not depend on the "validity" of the plat to which the property descriptions in the deeds refer if the plat is sufficient to locate on the ground the property described. The legal descriptions in the tax deeds in this case are legally sufficient whether or not the plat to which these refer was filed of record by the landowner.
Next, after the St. Johns River Estates plat was filed in the public records in 1964, the company filing the plat gave a mortgage to the then titleholder[4] to *415 Government Lot 7 which mortgage was assigned to Bernarr Cowan, Trustee. Attorney for appellant tax deed grantees also argues that the company filing the plat, and other persons and companies in appellees' chain of title, and Bernarr Cowan "were all extensively interrelated." If true, this fact has nothing to do with the title issue in this case but it serves to cause the attorneys for both parties to argue about their respective "chains of title" by which both seem to suggest, erroneously, that some of these matters constitute a chain of title upon which appellant's tax deeds are based and that, conversely, appellant's claim of title is legally based on the validity of these background documents. This, of course, is incorrect, and all of these matters are immaterial because appellant's claim to title is based squarely on the validity of the three tax deeds in question. Appellant has but one link in each of its three chains of title and that link is a tax deed. This is so because valid tax deeds constitute the beginning of a new title and are not derivative and are not dependent on the validity of the title of any former titleholder.[5]
In addition to their argument that the reference to the "wild" subdivision plat invalidates appellant's tax deeds, appellees make many other immaterial arguments, viz: (1) that the appellees have a good connected chain of title  this appears to be correct up to the moment of time the tax deeds issued; (2) appellees have been in actual possession since June 3, 1969  a valid tax deed cuts off all prior titles however acquired or held; (3) appellees have paid all tax bills presented by Volusia County since 1968  the obligation to pay ad valorem taxes to avoid loss of land by tax deed is on the owner and not on the taxing officials; and (4) appellees received no notice that a subdivision was being platted on their property  the subdivision plat was recorded 4 years before appellees first acquired any equitable interest and 14 years before they received record title. A proper title examination made when they acquired title would have revealed the subdivision plat. In addition the annual tax bill gave appellees annual notice that a part of Government Lot 7 (to which they had record title) was in St. Johns River Estates and that the tax bills did not cover that part of Government Lot 7.
The sole dispositive issue in this case is the validity of appellant's tax deeds. The validity of tax deeds depends on the validity of the underlying tax assessments and compliance with all constitutional and statutory conditions prerequisite to their issuance. Appellant's tax deeds are themselves prima facie evidence of their own validity (see section 197.552, Florida Statutes (1985), formerly section 197.271, Florida Statutes) and appellees plead no facts adversely affecting the validity of the tax deeds, such as, that appellees did not receive legal notice of the tax deed sale, or that the procedures prescribed for the issuance of tax deeds were not followed, or that the property was not subject to taxation, or that the taxes had been paid, or that the property had been redeemed, prior to the issuance of the tax deeds, see section 197.0151, Florida Statutes (1985), formerly section 197.056, Florida Statutes.[6] To the contrary, the record affirmatively shows no infirmity in the original assessment of the 1977 taxes, that taxes were not paid on platted Lots 1, 2 and 3, that there was no double assessment, that the tax deeds were issued in conformity to statutory procedure, and that appellees received but did not act upon statutory notice of the tax deed sale.[7]
*416 Finally, appellees argue the unfairness and injustice of their loss of title for failure to pay the taxes that led to the tax certificates and tax deeds in this instance. Most citizens understand that "if you don't pay your taxes the government will take your land!" The government exercises harsh remedies to collect its taxes. However, because the tax collection procedure meets constitutional due process and is established by statutory law, the fairness question is for the legislature, not for the judiciary.
We affirm the trial court's dismissal of appellant's count 3 because it does not state a cause of action.
The summary judgment in favor of appellees is reversed and the cause remanded for further proceedings consistent with this opinion.[8]
REVERSED.
COBB and SHARP, JJ., concur.
NOTES
[1] A "wild" plat refers to a subdivision plat placed in the public records by one who does not appear to have been the titleholder of the platted lands.
[2] This description in appellees' deed, of course, includes platted Lots 1, 2 and 3.
[3] In actuality, by controlling the recording of plats, the government regulates the preparation of plats and controls the development of land. Also, plats are a convenient vehicle by which easements for roads and utilities are dedicated to the public.
[4] A recorded mortgage from a stranger to the record titleholder normally clouds the title to land because it suggests the possibility that the mortgage secures purchase money and that there exists an unrecorded deed from the titleholder to the stranger.
[5] See Torreyson v. Dutton, 137 Fla. 683, 188 So. 805 (1939), modified on other grounds, 138 Fla. 873, 190 So. 430 (1939); Taff v. Hodge, 132 Fla. 642, 182 So. 230 (1938); Hecht v. Wilson, 107 Fla. 421, 144 So. 886 (1932); Dean v. Kane, 106 Fla. 814, 143 So. 656 (1932); Stuart v. Stephanus, 94 Fla. 1087, 114 So. 767 (1927); Lee v. Carpenter, 132 So.2d 433 (Fla. 2d DCA 1961).
[6] The legal issues presented by the pleadings are resolved by this appeal which now become "the law of the case."
[7] Section 197.522, Florida Statutes (1985), formerly section 197.256, Florida Statutes.
[8] Appellant failed to appeal the trial court's dismissal of appellant's motion for summary judgment.