Ms. Linda S. Calvert Hanson General Counsel Flagler Estates Road and Water Control District 3501-B North Ponce de Leon Boulevard, Suite 342 St. Augustine, Florida 32095
Dear Ms. Hanson:
On behalf of the Flagler Estates Road and Water Control District Board of Supervisors, you ask substantially the following questions:
1. Is Chapter 197, Florida Statutes, the sole method of enforcing liens on property within the Flagler Estates Road and Water Control District for nonpayment of district assessments?
2. May the owner of property that is the subject of a tax certificate held by the county continue to vote in district elections?
In sum:
1. Chapter 197, Florida Statutes, constitutes the sole method of enforcing liens on property within the Flagler Estates Road and Water Control District for nonpayment of district assessments.
2. The owner of property that is the subject of a tax certificate held by the county may continue to vote in district elections until a tax deed is issued.
Question One
The Flagler Estates Road and Water Control District (district) is an independent special district governed by Chapter 298, Florida Statutes, and by special act, Chapter 98-529, Laws of Florida.[1]
You state that the district imposes an annual non-ad valorem maintenance assessment on all landowners within the district to cover operations and maintenance. A large number of landowners, however, have failed to pay these assessments and there is now a sizeable arrearage of district assessments.
According to your letter, tax certificates have been offered on a number of these parcels over the years. You state that, as no one has bid on the certificates, Flagler County now holds the tax certificates for which the district is the majority interest holder. The district is interested in whether Chapter 197, Florida Statutes, constitutes the exclusive method whereby the district may foreclose on its liens.
Section 298.341, Florida Statutes, provides:
"All non-ad valorem assessments provided for in this chapter become delinquent and bear penalties on the amount of the assessments in the same manner as county taxes. The assessments constitute a lien until paid on the property against which assessed and are enforceable in the same manner as county taxes." (e.s.)
In addition, section 298.345, Florida Statutes, provides:
"The collection and enforcement of all non-ad valorem assessmentslevied by the district shall be at the same time and in likemanner as county taxes, and the provisions of the Florida Statutes relating to the sale of lands for unpaid and delinquent county taxes, the issuance, sale, and delivery of tax certificates for such unpaid and delinquent county taxes, the redemption thereof, the issuance to individuals of tax deeds based thereon, and all other procedures in connection therewith, apply to the district and the delinquent and unpaid assessments and taxes of the district to the same extent as if the statutory provisions were expressly set forth in this chapter. All non-ad valorem assessments are subject to the same discounts as county taxes." (e.s.)
Thus, Chapter 298, Florida Statutes, which governs the district's operation, states that the procedures for nonpayment of the district's assessments shall be handled in the same manner as delinquent county taxes. It is a rule that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[2]
In Attorney General Opinion 97-51, this office considered whether a county was authorized to file an equitable proceeding to establish and foreclose its lien arising by reason of unpaid taxes or special assessments. The county had a significant amount of unpaid taxes and assessments, resulting in a large number of properties being the subject of sales of tax certificates. However, attempted sales of the tax certificates generally resulted in no sales, and the property was placed on the list of "lands available for taxes," pursuant to section 197.502(7), Florida Statutes. Lands are maintained on this list for a period of seven years, after which the property is deeded to the county pursuant to section 197.502(8), Florida Statutes. The county, however, was interested in filing an equitable proceeding after a default in the payment of taxes to establish and foreclose its lien.
In Florida, a lien for an assessment is purely statutory and cannot be enforced in the absence of legislative authority.[3]
Section 197.122(2), Florida Statutes, states that "[a] lien created through the sale of a tax certificate may not be foreclosed or enforced in any manner except as prescribed in [chapter 197]"[4] while section 197.432(2), Florida Statutes, provides that "[a] lien created through the sale of a tax certificate may not be enforced in any manner except as prescribed in [chapter 197]."
Thus, this office concluded in Attorney General Opinion 97-51 that the provisions of Chapter 197, Florida Statutes, are the exclusive method for enforcing liens created through the sale of tax certificates for unpaid ad valorem taxes and special assessments.
Inasmuch as Chapter 298, Florida Statutes, requires that enforcement of the district's liens be handled in the same manner as county taxes, I am of the opinion that Chapter 197, Florida Statutes, constitutes the sole method of enforcing liens on property within the district for nonpayment of district assessments.[5]
Question Two
Sections 298.11 and 298.12, Florida Statutes, entitle each landowner within the district to vote, in person or by proxy, in district elections. Specifically, section 298.11(2) provides in part:
"At the election, each and every acre of land in the district shall represent one share, and each owner shall be entitled to one vote in person or by proxy in writing duly signed, for every acre of land owned by him or her in the district, and the three persons receiving the highest number of votes shall be declared elected as supervisors. The appointment of proxies shall comply with s.607.0722. Landowners owning less than 1 acre in the aggregate shall be entitled to one vote. Landowners with more than 1 acre are entitled to one additional vote for any fraction of an acre greater than 1/2 acre, when all of the landowners' acreage has been aggregated for purposes of voting. The landowners shall at such election determine the length of the terms of office of each supervisor so elected by them, which shall be respectively 1, 2, and 3 years, and they shall serve until their successors shall have been elected and qualified."[6]
Section 298.005(2), Florida Statutes, defines "Owner" as
"the owner of the freehold estate, as appears by the deed record. The term does not include reversioners, remaindermen, or mortgagees, who are not to be counted and need not be notified by publication or served by process, but are to be represented by the present owners of the freehold estate in any proceeding under this chapter."
The statute contemplates that the present owner of the freehold estate is entitled to vote in district elections. The sale of a tax certificate does not make the certificate holder the owner of the property nor does it remove the present owner from possession of the freehold estate.[7] Rather, a tax certificate is defined in section 197.102(3), Florida Statutes, to mean "a legal document, representing unpaid delinquent real property taxes, non-ad valorem assessments, including special assessments, interest, and related costs and charges, issued in accordance with this chapter against a specific parcel of real property and becoming a first lien thereon, superior to all other liens, except as provided by s.197.573(2)." The delinquent owner loses the property only after application for a tax deed is made, the property is sold for nonpayment of taxes, and a tax deed is issued.[8]
Accordingly, I am of the opinion that the owner of property that is the subject of a tax certificate held by the county may continue to vote in district elections until a tax deed is issued.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 4, Ch. 98-529, Laws of Florida, setting forth s. 1 of the district's charter:
"The drainage district originally was empowered to accept and maintain drainage improvements already in existence and to operate pursuant to the general drainage laws of chapter 298, Florida Statutes. In addition to the powers provided for in chapter 298, Florida Statutes, in 1981 the district was granted the power to maintain roadways and roads necessary and convenient for the exercise of the powers or duties or any of the powers or duties of said district; and in furtherance of the purposes and intent of chapter 298, Florida Statutes, to maintain streets, roadways, and roads necessary and convenient to provide access to and efficient development of areas made suitable and available for cultivation and settlement, urban and suburban, and other beneficial use and development as a result of the drainage, irrigation, and reclamation operations of the district for the lands only within the boundaries of the district situated in St. Johns County. This road authority geographically was expanded in 1982 to include the lands within the boundaries of the district situated in Flagler County as well as a component of the district's road maintenance authority within the district boundaries. This authority is hereby specified to include, but not be limited to, street lighting, road striping, reconstruction, and any other safety features or improvements customary to a modern road system. Surplus real property owned by the district can be made available to the public for passive use and the district is authorized to enter into lease or interlocal agreements with other governmental entities for the operation and/or maintenance of such passive use areas within the district boundaries."
[2] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944);Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952); Thayerv. State, 335 So.2d 815, 817 (Fla. 1976).
[3] See, generally, 48 Fla. Jur. 2d Special Assessments s. 41;Town of Naples v. Naples Improvement Corporation, 2 So.2d 383
(Fla. 1941) (where the court declined to impose an equitable lien for the street improvements effected by a town under its statutory authority, no attempt having been made by it to perfect a statutory lien).
[4] See, e.g., 52 Fla. Jur. 2d Taxation s. 21:250 (As of July 1, 1973, the procedure specified in Florida Statutes Chapter 197 became the exclusive means of enforcing the lien of a tax sale certificate. But certificates issued before that date can still be enforced by private action, at least if they were not once held by a county, and these old certificates have a life of twenty years. So, if any are still in existence, private foreclosure is conceivable through the middle of 1993).
[5] See, e.g., ss. 197.502 and 197.512, Fla. Stat.
[6] See, Lake Howell Water and Reclamation District v. State,268 So.2d 897 (Fla. 1972), upholding the constitutionality of the statute's per acre voting scheme.
[7] See generally, Dawson v. Saada, 608 So.2d 806 (Fla. 1992) (a landowner whose property is to be sold for delinquent taxes has a vested ownership interest in the subject property and is therefore entitled to notice of a pending tax deed sale).
[8] See, s. 197.562, Fla. Stat., stating that "[a]ny person, firm, corporation, or county that is the grantee of any tax deed under this law shall be entitled to the immediate possession of the lands described in the deed." Cf., D.R.L., Inc. v. Murphy,508 So.2d 413 (Fla. 5th DCA 1987) (tax deeds are prima facie evidence of their own validity).