867 So.2d 528 (2004)
HUTCHINSON ISLAND REALTY, INC., et al., Appellant,
v.
BABCOCK VENTURES, INC., Appellee.
Nos. 5D02-3179, 5D03-718.
District Court of Appeal of Florida, Fifth District.
February 27, 2004.
*529 Robert Bruce Snow of Robert Bruce Snow, P.A., Brooksville, for Appellant.
Alan S. Zimmet and Julia Mandell Cole of Zimmet, Unice, Salzman & Feldman, P.A., Clearwater, for Appellee.
PETERSON, J.
Hutchinson Island Realty, Inc. et al. ("Hutchinson"), appeals a final judgment in which the title to real property was quieted in favor of Babcock Ventures, Inc. ("Babcock"), who acquired title by a tax deed.
Hutchinson acquired a parcel of realty in 1987 by a warranty deed that indicated Hutchinson's address as "1920 Palm Beach Lakes Boulevard, West Palm Beach, Florida" ("West Palm Beach address"). In 1991, it sold a portion of the realty, leaving a remainder of 21.3 acres, the title to which creates the controversy in the instant case ("Property"). Hutchinson also granted a mortgage on the Property to Appellant, T. Brayl Copp ("Copp"), in 1991, and the address shown on the mortgage as Copp's address was also the same West Palm Beach address used by Hutchinson.
From 1991 through 1997, Hutchinson received the tax notices in the name of Hutchinson Isle Realty, Inc. at the West Palm Beach address, but failed to pay the real estate taxes on the Property for the tax years 1991 through 1994. A tax certificate holder made an application for a tax deed in 1996, and after the clerk of the circuit court for Hernando County sent a notice of the tax deed application to Hutchinson Isle Realty, Inc. at the West Palm Beach address, Hutchinson paid the outstanding taxes thereby avoiding a tax sale.
However, in 1997, after Hutchinson again failed to pay real estate taxes on the Property for the tax year 1996, another tax certificate was issued and that holder applied later for a tax deed.[1] When the tax certificate holder applied for a tax deed sale, the tax collector engaged a private firm, Accu-Search Title Examination ("Accu-Search"), to conduct a title search. Following the title search, the tax collector prepared a statement as required by section 197.502(4), Florida Statutes (2000), and forwarded it to the clerk of court for the purpose of giving notice to the title and lienholders so that the sale may be conducted. The tax collector's statement:
1. Described the property as "21.3 Acres MOL in SE 1/4 Lying E of Springwood Est. & N of Spring Hill Blvd.;"
2. Named the apparent title holder as "Hutchinson Island Realty, Inc.;"
3. Named the owner to whom taxes were assessed on the current role as "Hutchinson Isle Realty, Inc.;"
4. Named the mortgagee as "T. Brayl Corp."
(Emphasis added). Apparently, the legal description was an abbreviated one used by the taxing authorities to facilitate record *530 keeping and does not include a section, township, range or even the county in which the Property is located. The erroneous name of the corporation shown on the assessment role also appears to be an effort to abbreviate "Island" to "Isle" and the error showing the mortgagee as "Corp." rather than "Copp" must have been an error committed by the tax collector since a copy of the mortgage with the correct spelling of Copp's name was attached to Accu-Search's title report.
Hutchinson's and Copp's inattention to the ad valorem taxation process compounded the taxing authorities' deficiencies. Although Hutchinson had avoided a tax sale in 1996 for non-payment of taxes for 1991 through 1994, it again failed to pay taxes for 1996, 1997 and 1998 on property assessed for $213,000. Additionally, Hutchinson closed its West Palm Beach office in 1997 or 1998 where all previous tax bills and notices had been sent, but failed to notify the tax collector of a new address.
The clerk of court properly relied on the statement supplied by the tax collector, and thereby, innocently perpetuated the deficiencies by including them in four attempts to notify Hutchinson of the impending tax sale. Separate notices were sent by certified mail to Hutchinson Isle Realty, Inc. and T. Brayl Corp. to the West Palm Beach address. Not surprisingly, these notices were returned to the clerk as undeliverable because Hutchinson had closed the office at that address. Notice of the application was published for four consecutive weeks in a newspaper located in the county where the Property was located employing the abbreviated word "Isle" for "Island" and the abbreviated property description. The Palm Beach county sheriff also attempted personal service at the West Palm Beach address. Finally, a notice was posted upon a parcel of the Property.[2]
On October 4, 2000, the clerk conducted a sale of the Property. Babcock submitted the highest and winning bid and a tax deed was recorded containing the tax collector's abbreviated description of the Property.
Having acquired title by the tax deed, Babcock filed an action to quiet title. Hutchinson filed a counterclaim seeking to set aside the tax deed claiming that it and the mortgagee were misnamed and that the abbreviated legal description of the Property contained in the documents prepared, issued and advertised in connection with the tax deed sale were defective, vague, and indefinite and failed to properly identify the Property sufficient to put Hutchinson on notice of the sale. Hutchinson claimed that because title to the Property was taken from it without due process of law, the tax deed was void.

I. NOTICE REQUIREMENTS
Hutchinson and Copp contend that they have been deprived of their respective interest in the Property without due process of law because the notice requirements of section 197.522(1), Florida Statutes (2000), were not met when the clerk failed to mail a notice to Hutchinson Island Realty, Inc. and Copp, and only mailed notices to Hutchinson Isle Realty, Inc. and T. Brayl Corp.
Upon receipt of an application from a certificate holder for a tax deed, the tax collector prepares a statement with the names of the persons to be notified prior to the sale of the property. § 197.502(4) Fla. Stat. (2000). Among the persons to be named by the tax collector under section 197.502(4) are: (a) any legal titleholder *531 of record; (b) any mortgagee of record; and (c) any person whom the property was assessed on the tax roll for the year the property was last assessed. §§ 197.502(4)(a), (c), (f), Fla. Stat. (2000). The tax collector then delivers the statement to the clerk of the circuit court.
Upon receipt of the tax collector's statement, the clerk is required to notify the persons listed in it. § 197.522(1), Fla. Stat. (2000); Dawson v. Saada, 608 So.2d 806 (Fla.1992). Section 197.522(1) provides:
The clerk of the circuit court shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed on the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.[3]
The clerk is not required to search all public records available to determine the actual status of ownership. E.g., Bostwick v. Clukies, 801 So.2d 961, 962 (Fla. 5th DCA 2001); see also Baron v. Rhett, 847 So.2d 1032, 1034 (Fla. 4th DCA 2003). In addition, the clerk has no general duty to determine the accuracy of the tax collector's statement. Bostwick, 801 So.2d at 962. In Bostwick this court determined that the clerk's responsibility is to notify the persons whose names are provided in the tax collector's statement and any failure to provide notice to others not named in the tax collector's statement does not invalidate the tax deed. Id. Reviewing the clerk's compliance with the notice requirements of section 197.552(1), Florida Statutes (2000), the trial court relied on Dawson v. Saada, 608 So.2d 806 (Fla.1992), which held that the notice required by section 197.552(1) is notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Dawson, 608 So.2d at 808 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "Section 197.522(1) meets constitutional due process requirements by mandating notice reasonably calculated to apprise landowners of the pending deprivation of their property." Id. In addition, "[t]he failure of anyone to receive notice as provided in section 197.122(1) does not affect the validity of the tax deed as long as the clerk complies with the notice requirements of subsection (1)." Id.
In the instant case, the due process notice requirements of section 197.522(1) were met by the clerk of court when the clerk adhered to those mandatory provisions. The clerk properly informed the interested parties listed on the tax collector's statement by sending notices to the West Palm Beach address. Even if the clerk had sent a notice addressed to Hutchinson Island Realty rather than to Hutchinson Isle Realty, Inc., at the West Palm Beach address, Hutchinson would not have received the notice because it had not been at that address since at least 1998. Furthermore, Hutchinson had received, accepted and responded to numerous tax notices in the past dating back to 1992 in the name of Hutchinson Isle Realty at the West Palm Beach address without protest.

II. CRITERIA FOR INVALIDATING A TAX DEED OR TAX SALE
Section 197.122, Florida Statutes (2000), specifies the criteria by which a tax deed *532 or tax sale may be invalidated when there is compliance with the notice requirements of section 197.522(1):(a) the property was not subject to taxation; (b) the taxes have been paid before the sale of personal property; or (c) the real property had been redeemed before the execution and delivery of a deed based upon a certificate issued for the nonpayment of taxes. §§ 197.122(1)(a), (b), (c), Fla. Stat. (2000). Under Dawson, if the notice requirements of section 197.522(1) are met, a sale of real property for the nonpayment of taxes must be held valid unless one of the criteria for invalidation in section 197.122(1) is not met. In the instant case, it is undisputed that the Property was subject to taxes, and that Hutchinson failed to pay the taxes or redeem the tax certificate prior to the sale of the Property and prior to the delivery of the deed to Babcock. Therefore, there is no basis for invalidating the tax deed or tax sale under section 197.122, Florida Statutes (2000).

III. INADEQUACY OF LEGAL DESCRIPTION
Hutchinson lastly contends that the tax deed was invalid because the legal description of the Property was inadequate, the legal description was patently ambiguous and the trial court erred by relying on extrinsic evidence to determine the adequacy of the description in the tax notices.
Hutchinson relies upon Carson v. Palmer, 139 Fla. 570, 190 So. 720 (1939), in which the Florida Supreme Court defined a patent ambiguity in a property description as "such an uncertainty appearing on the face of the instrument that the Court, reading the language of the instrument in the light of all facts and circumstances [contained in it], is unable to derive ... the intention of the parties as to what land is to be conveyed." Carson, 190 So. at 722. Carson reasons that a patent ambiguity may not be removed by parol evidence, since that would necessitate the insertion of new language which under the parol evidence rule is not permissible. Id. The Carson deed had two inconsistent descriptions, either of which would identify a different parcel of property from that described by the other. The court found that this description was void for uncertainty because there was nothing in the deed that indicated which parcel was intended to be conveyed, and the description omitted a section, township and range.
Review of cases subsequent to Carson indicates that this "patent ambiguity" doctrine has been continually eroded by the courts since 1939 so as to now be virtually nonexistent. Instead, the rule enunciated in an earlier 1893 case has been embellished to the point that almost any description that could possibly be explained by parol evidence or research of historical records will suffice. That case is Campbell v. Carruth, 32 Fla. 264, 13 So. 432 (1893), which incorporated the often repeated rule that if the description in a deed is such that a surveyor, by applying the rules of surveying, can locate and identify the land intended to be conveyed, such description is sufficient and the deed will be sustained. Language in Mendelson v. Great Western Bank, F.S.B., 712 So.2d 1194 (Fla. 2d DCA 1988), lends some help in explaining what a surveyor's bag of tools may contain in interpreting a deficient description in a deed:
Although we do not believe that a deed may be rendered sufficient by a "conversation with the parties," a property description may be aided by reference to the public records if the instrument contains information sufficient to identify the property through that line of inquiry. "Extrinsic facts pointed out in the description may be resorted to to ascertain the land conveyed, and the property may be identified by extrinsic evidence, *533 as in the case of records of the county where the land is situate." (citation omitted)
Id. at 1197.
Examples of the erosion of the "patent ambiguity" rule by the judiciary include:
1. The property description in Western World, Inc. v. Dansby, 566 So.2d 866 (Fla. 1st DCA 1990), consisted only of the premises located at "2309 Apalachee Parkway" in Tallahassee, Florida. The court found no patent ambiguity in that description and any latent ambiguity regarding the extent of the parcel intended to be conveyed could be overcome by parol evidence.
2. In Bajrangi v. Magnethel Enterprises, Inc., 589 So.2d 416 (Fla. 5th DCA 1991), this court found that "1101 1/2 East Plant Street ... and the surrounding real estate" was a sufficient legal description when the parties' intent was to describe a particular parcel. In doing so, it reviewed other liberal interpretations of descriptions of property that would be impossible to locate unless parol evidence was allowed to establish boundaries. Cases reviewed included Simons v. Tobin, 89 Fla. 321, 104 So. 583 (1925), in which the Florida Supreme Court required specific performance of a contract referring merely to "the Esmeralda Hotel property" and Lente v. Clarke, 22 Fla. 515, 1 So. 149 (1886), in which "my forty near the Garrison lands" was held to be a valid description. Lente cited Hurley v. Brown, 98 Mass. 545 (Mass.1868), and Scanlan v. Geddes, 112 Mass. 15, (1873), cases approving descriptions of property as "a house and lot of land situated on Amity Street, Lynn, Mass" by supplying the language "owned by me" and "a house on Fifth Street between D & E Streets" as a valid description of not only the building but the land upon which it stands. This court made the observation that:
"[t]he distinction between latent and patent ambiguities in relation to parol evidence appears to be disappearing. The modern tendency is to allow a liberal interpretation of the description of land and to uphold the validity of such description if there is any way possible to arrive at the intention of the parties thereto ..."
Originally ambiguities were classified as "latent" and "patent", and this classification still exists in many jurisdictions. However, the distinction is gradually disappearing, and parol evidence is held admissible to explain an ambiguity whether latent or patent.
Bajrangi, 589 So.2d at 420 n. 5.
In view of the precedent allowing liberal interpretations of faulty descriptions supplemented by extrinsic evidence, we must find that the tax collector's abbreviated description was sufficient because a particular parcel to be conveyed was intended and the property could be identified by reference to the county records. Indeed, this issue could have been completely avoided by taxing authorities had the abbreviated form not been used in the tax foreclosure proceedings. We note that the real property description used in the final judgment quieting title was the same legal description contained in the mortgage from Hutchinson to T. Brayl Copp. The legal description was in the form of a detailed survey attached to the mortgage. A copy of that mortgage was attached to the title search performed by Accu-Search and used by the tax collector to furnish the statement to the clerk of court so that tax foreclosure proceedings could begin.
Hutchinson alleges that the trial court reformed the deed by using the more detailed legal description in the judgment quieting title. This, however, was done with the aid of extrinsic evidence supplied *534 by the surveyors. Both the tax collector's abbreviated description and the detailed description found in the Copp mortgage and used in the final judgment quieting title refer to the same parcel of real property.
The opinion in D.R.L., Inc. v. Murphy, 508 So.2d 413 (Fla. 5th DCA 1987), recognized the harsh but constitutional remedies used to collect taxes and while the fairness of the procedure may be questioned, resolution of that issue is one for the Legislature. The Legislature also seems to have eliminated accuracy in tax foreclosure proceedings by taxing authorities when it enacted section 197.122, thereby limiting the grounds for attacking tax foreclosures. The limitations on the ability to attack a tax foreclosure make the tax deed in the instant case, close enough for government work. Moreover, it is well-established that most citizens understand that "if you don't pay your taxes the government will take your land." Id. at 416.
The judgment quieting title is affirmed.
PLEUS and ORFINGER, JJ., concur.
NOTES
[1] Tax certificate holders must hold the tax certificate for a statutory minimum two-year period before applying for a tax deed. § 197.502(1), Fla. Stat. (2000).
[2] There is no contention that the posting of the notice was not made within the boundaries of the Property that was the intended parcel incurring the unpaid taxes.
[3] Additional, but not mandatory, notice is provided by the statute: service of notice by the sheriff, section 197.522(2), Florida Statutes (2000), and publication of notice in a general circulation newspaper, section 197.512, Florida Statutes (2000).