988 So.2d 1114 (2008)
SOUTH INVESTMENT PROPERTIES, INC., etc., et al., Appellants,
v.
ICON INVESTMENTS, LLC, Appellee.
No. 5D07-1316.
District Court of Appeal of Florida, Fifth District.
July 18, 2008.
Rehearing Denied August 12, 2008.
*1115 Christopher C. Cathcart of Ossinsky & Cathcart, P.A., Winter Park, for Appellants.
Matthew G. Brenner and Gregory S. Slemp of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellee.
SAWAYA, J.
South Investment Properties, Inc., and Surna Construction, Inc., as trustee (hereinafter collectively "South Investment"), appeal the Final Summary Judgment Ordering Cancellation of Tax Deeds entered in favor of Icon Investments, LLC (hereinafter "Icon"). Three tax deeds conveying three condominium unitsunits 403, 404, and 405, Spring Lake View Condominiumto South Investment are the subject of these proceedings. As to the tax deed conveying unit 405, we affirm the final summary judgment in favor of Icon without further comment. Hence, the remainder of this opinion will address the issues relating to units 403 and 404. As to these two units, South Investment argues the final summary judgment should be reversed because the clerk followed the statutory procedure for a valid tax deed sale and the failure of Icon to receive notice resulted solely because of Icon's failure to notify the tax appraiser of address changes.
The two condominium units are located at 7345 Sand Lake Road, Orlando, Florida (hereinafter "Sand Lake Road address"). The legal description contained in the warranty deed that originally conveyed the units to Icon in October 2001 identified the property in pertinent part as "Unit 403[and] 404 ... SPRING LAKE VIEW CONDOMINIUM...." The same legal description of the property is contained in the mortgage agreement entered between Icon and First Commercial Bank of Florida at the time of the conveyance. The warranty deed and the mortgage both listed Icon's mailing address as 8129 Sandpointe Boulevard, Orlando, Florida (hereinafter "Sandpointe address"). The Sandpointe address was not only Icon's principal business location at the time but also the residence of Icon's owner, Scott James, who is and has been a real estate broker since 2000. Prior to that, James was a real estate salesperson for approximately five years.
Subsequently, Icon and James moved. However, they did not provide the post office with a forwarding address, and they did not notify the property appraiser, tax collector, or clerk of court of any address change.
*1116 Icon failed to pay property taxes on units 403 and 404 for tax years 2002, 2003, and 2004. James claims that he thought the mortgage company was making the payments. Accordingly, tax certificates were sold for the two units for tax years 2002 and 2003, and, in 2005, application was made for issuance of a tax deed for each unit.
The tax collector then proceeded to follow its normal procedures for compiling the names and addresses of persons to be notified of the pending tax deed sales, and it delivered the appropriate forms for each unit to the clerk of court. As to each unit, the tax collector's certification identified Icon and the Sandpointe address as the name and address of the property owner to be notified. The Sandpointe address was also the mailing address for Icon listed on the latest assessment roll.
Because each condominium unit is a separate parcel of real property with its own separate parcel identification number, the clerk treated each of the units separately. Each unit had its own separate file and each was sold separately. The following notification procedure was used by the clerk.
1. Pursuant to section 197.522(1)(a), Florida Statutes (2005), the clerk sent notice of application for tax deed by certified mail to the Sandpointe address. The return receipts indicate that these notices were received.
2. The clerk sent copies of the notices to the sheriff to be served in accordance with Florida law, and the sheriff posted notice at the Sandpointe address.
3. The clerk also published notice of the pending tax deed sale in the Orlando Sentinel newspaper for 30 days, pursuant to section 197.512, Florida Statutes (2005).[1]
The tax deed sale was held on November 3, 2005, and South Investment was the successful bidder for both units. Thus, the clerk issued tax deeds to South Investment for each unit. Icon filed an action to cancel and set aside the two tax deed sales. South Investment answered the complaint and counterclaimed to quiet title as to both tax deeds. The trial court granted Icon's motions for summary judgment and entered final summary judgment in favor of Icon, canceling the tax deeds for each unit.
South Investment argues the trial court erred by entering summary judgment in favor of Icon. "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Volusia County v. Aberdeen at Ormond Beach, 760 So.2d 126, 130 (Fla.2000). The burden falls on the moving party to make this showing. Fla. R. Civ. P. 1.510; Rodriguez v. Saenz, 866 So.2d 184, 186 (Fla. 5th DCA 2004) ("A party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact, and that the movant is entitled to a judgment as a matter of law." (citing rule 1.510(c); Holl v. Talcott, 191 So.2d 40 (Fla. 1966))); see also Roach v. State Farm Mut. Auto. Ins. Co., 892 So.2d 1107, 1110 (Fla. 2d DCA 2004) (same), quashed on other grounds, 945 So.2d 1160 (Fla.2006); Dahly v. Dep't of Children & Family Servs., 876 So.2d 1245 (Fla. 2d DCA 2004) (same). The standard of review is de *1117 novo. Aberdeen, 760 So.2d at 130. Here, South Investment contends the trial court erred by determining that, as a matter of law, the tax deed sales for units 403 and 404 were void for lack of proper notice.
The law relating to the notice requirements for tax sales for unpaid real property taxes was analyzed by the Florida Supreme Court in Vosilla v. Rosado, 944 So.2d 289 (Fla.2006). In that case, unlike the instant case, the property owners had delivered written notice to the tax collector and the clerk of court that their address had changed, and they informed the clerk and the tax collector of their new address. Despite this notice, their address was not updated on the tax assessment roll and, when the property owners failed to pay their real property taxes, the notice regarding application for the tax deed was mailed to the former address. Nevertheless, the court discussed the law regarding the notice requirements when a notice of address change is not provided by the property owner. The court explained:
Chapter 197 governs tax collections, sales, and liens in this state. Section 197.522(1)(a) states that the clerk of the circuit court

shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.
(Emphasis supplied.) Section 197.502(4)(a) provides in pertinent part:
(4) The tax collector shall deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates or, if the certificate is held by the county, that all appropriate fees have been deposited, and stating that the following persons are to be notified prior to the sale of the property:

(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of the lands to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.

(Emphasis supplied.)
When read together, sections 197.502(4)(a) and 197.522(1)(a) "require the clerk to mail a notice of tax deed sale to the legal titleholder at the titleholder's address as it appears on the latest assessment roll." Delta Prop. Mgmt., Inc. v. Profile Investments, Inc., 875 So.2d 443, 447 (Fla.2004). However, section 197.522(1)(d), Florida Statutes (2000), states that the "failure of anyone to receive notice as provided herein shall not affect the validity of the tax deed issued pursuant to the notice." Relying on language from this provision, we have explained that "`[t]he failure of anyone to receive notice' as provided in section 197.522(1) does not affect the validity of the tax deed as long as the clerk complies with the notice requirements of subsection (1)." Dawson v. Saada, 608 So.2d 806, 808 (Fla.1992) (alteration in original) (quoting § 197.522(1)(d), Fla. Stat. (1987)).
....
Determining whether the notice sent in compliance with the statutory requirements comports with due process requires *1118 us to determine whether the notice was reasonably calculated to apprise the titleholders of the impending tax sale "under all the circumstances" and "with due regard for the practicalities and peculiarities of the case." Mullane [v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314], 70 S.Ct. 652 [94 L.Ed. 865 (1950)]. Florida case law in this area reflects two significant scenarios: one in which the titleholder fails to provide a valid or updated mailing address, the other in which, as in this case, the titleholder informs the taxing authority of a new mailing address.
Id. at 293-95.
The court then analyzed three cases where the property owner did not provide a change of address notice: Bozeman v. Higginbotham, 923 So.2d 535 (Fla. 1st DCA 2006); Kidder v. Cirelli, 821 So.2d 1106 (Fla. 5th DCA 2002); and Evans v. Ireland, 707 So.2d 1135 (Fla. 2d DCA 1998). After discussing these cases, the court in Vosilla explained:
The common element in these cases is that the titleholder took no action to provide the taxing authorities an updated or accurate address. Thus, even though the titleholders did not receive actual notice of the pending tax deed sale, compliance with the statutory requirements led the courts to conclude that no due process violation occurred. Unlike Evans, Kidder, and Bozeman, in which the titleholders did not provide a correct or updated mailing address, the certified conflict issue in this case raises a due process concern over the adequacy of section 197.522(1) when the titleholder has informed taxing authorities of a change of address prior to the mailing of the statutory notice and the taxing authorities have actual notice of the change of address. On this basis, Evans, Kidder, and Bozeman are distinguishable.
944 So.2d at 296.
Applying the principles discussed in Vosilla to the instant case, the record establishes that Icon changed its address and did not notify the tax collector, property appraiser, or clerk of court. The notices were sent to the Sandpointe address, which is listed as Icon's mailing address on the deed, mortgage, and tax assessment rolls maintained by the tax collector. The clerk complied with the provisions of section 197.522(1)(a) by sending notice by certified mail to that address. For both units 403 and 404, the clerk received the signed receipt indicating that the notice was received. Therefore, as the court held in Vosilla, "`[t]he failure of anyone to receive notice' as provided in section 197.522(1) does not affect the validity of the tax deed as long as the clerk complies with the notice requirements of subsection (1)." 944 So.2d at 294 (quoting Dawson v. Saada, 608 So.2d 806, 808 (Fla.1992)). We conclude Icon's claim that it did not receive the notices is unavailing. We note, parenthetically, that in addition to the certified mailing, the clerk published notice in the newspaper and posted notice at the Sandpointe address.
We totally reject the claim made by Icon that the notice is insufficient because the signatures on the return receipts for both units are not those of representatives of Icon and that the clerk is required to investigate and determine who is and is not authorized to accept mail on behalf of a corporate legal entity such as Icon. See Patricia Weingarten Assocs., Inc. v. Jocalbro, Inc., 974 So.2d 559, 564 n. 3 (Fla. 5th DCA 2008) ("The government is not required to search the `phonebook and other government records such as income tax rolls' to locate a delinquent taxpayer. Jones [v. Flowers], 547 U.S. [220] at 235-36, 126 S.Ct. 1708 [164 L.Ed.2d 415 *1119 (2006)]; see Jones, 547 U.S. at 247 n. 6, 126 S.Ct. 1708 (Thomas, J., dissenting) (stating that Supreme Court `stop[ped] short of saddling State with ... searching state tax records, the phone-book, the Internet, department of motor vehicle records, or voting rolls, contacting his employer, or employing debt collectors')."); Hutchinson Island Realty, Inc. v. Babcock Ventures, Inc., 867 So.2d 528, 531 (Fla. 5th DCA 2004) ("The clerk is not required to search all public records available to determine the actual status of ownership."), review denied, 892 So.2d 1012 (Fla.2004). If the clerk is not expected to conduct this sort of investigation to locate a property owner, surely the clerk cannot be expected to investigate the signatures on a return receipt to determine if they belong to an employee or representative of a corporate property owner. We do not believe this is what the Legislature intended when it enacted section 197.522(1), and to impose that requirement on the clerk would defy logic and common sense. As the Court observed in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-14, 70 S.Ct. 652, 94 L.Ed. 865 (1950), "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified."
Icon contends that because James thought the mortgage company was paying the taxes and he was unaware they were not being paid, these circumstances militate toward holding that the notice was insufficient. We reject this argument. The mortgage specifically requires that Icon pay the real estate taxes for each unit and that funds would be escrowed for that purpose only if the mortgagee required it. There is nothing in the record to show that escrow was ever required by the mortgagee, and when James was asked, "Do you know whether or not they [Mortgagee] required that the taxes, that you make monthly deposits with them on the taxes?," he responded, "I don't know." James has been a real estate broker since 2000 and was a real estate salesperson for five years prior to that. For him to make this assertion given his experience in the field of real estate is incredible. Moreover, "[a]ll owners of property shall be held to know that taxes are due and payable annually and are charged with the duty of ascertaining the amount of current and delinquent taxes and paying them before April 1 of the year following the year in which taxes are assessed." § 197.122(1), Fla. Stat. (2005). James knew or should have known that the mortgage company was not paying the taxes. His professed ignorance about that matter is not a circumstance that renders the notice provided by the clerk insufficient.
We therefore conclude Icon failed to meet its burden of establishing that it was entitled to a judgment as a matter of law. Accordingly, the final judgment is reversed as to units 403 and 404 and this case is remanded for further proceedings. As to unit 405, the final judgment is affirmed.
AFFIRMED in part; REVERSED in part; and REMANDED.
GRIFFIN and COHEN, JJ., concur.
NOTES
[1] Notices for both units were also mailed to the Sand Lake Road address, but they were returned by the post office for insufficient address because the specific unit numbers (403 and 404) were not included in the addresses. In addition, at the clerk's request, the sheriff attempted to serve the notices at the Sand Lake Road address, however, the sheriff was unable to serve or even post the warnings because the specific unit numbers (403 and 404) were not included in the addresses on the notices.